No. 21,469.

THE ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY, *Appellant*, v. W. S. YOUNG and H. W. YOUNG, Partners, etc., *Appellees.*

### SYLLABUS BY THE COURT.

1. INTERSTATE COMMERCE—*Established Rates—Binding Alike on Shipper and Carrier.* A schedule of freight rates duly filed and published by a railroad company, and not disapproved by the interstate commerce commission, has the force of a statute, binding alike on shipper and carrier.

2. SAME—*Classification of Commodities—Binding on Court.* In an action to recover the amount of undercharges for freight shipments, computed according to schedule in force governing the subject, it is error for the court to receive and consider proof that the commodities shipped were not classified in the schedule according to correct principles.

Appeal from Reno district court; FRANK F. PRIGG, judge. Opinion filed April 6, 1918. Reversed.

*William R. Smith, Owen J. Wood,* and *Alfred A. Scott,* all of Topeka, for the appellant.

*Warren H. White,* of Hutchinson, for the appellees.

The opinion of the court was delivered by

BURCH, J.: The action was one to recover the amount of undercharges for freight on two mixed carloads of commodities known as "digester tankage" and "meat scraps." The defendant recovered, and the plaintiff appeals.

The following facts were agreed to:

"5. That the published tariffs and classifications of the plaintiff company, duly filed with the interstate commerce commission and in force and effect at the times of the aforesaid shipments, do not specifically list the commodity 'meat scraps' by such name under any item of any classification.

"6. That there was in force and effect at the time the cars mentioned in plaintiff's petition moved, western classification No. 52 and certain tariffs all of which had been filed with the interstate commerce commission and the provisions of these classifications and tariffs so far as they related to the shipments in question are as follows:

"The tariffs provided for a charge of forty cents per hundredweight on fourth-class matter, and for a charge of twelve cents per hundredweight on shipments in carload lots of matter rated as class E.

"Western classification No. 52 was in effect and provided on page 209, item 12, as follows:

### 'PACKING HOUSE PRODUCTS.

*Digester Tankage, Blood Meal, Meat Meal,*
*and Blood Flour.*

In bags, barrels or boxes, L. C. L. . . . . . . . . . . . . . . . . . . . . . . 4
In packages named, straight or mixed C. L., Min. Wt.
30,000 lbs. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . E'

"If this provision is applicable to the shipment in question, then the freight charges originally collected are correct, and the plaintiff cannot recover.

"7. Said classification No. 52, item 11, page 73, was as follows:

### 'ANIMAL AND POULTRY FOODS AND MEDICINES.

*Animal and Poultry Foods, not otherwise indexed*
*by name. Tonics and Regulators, Dry, prepared:*

Invoice value not exceeding 10 cents per pound and so re-
ceipted for, in bags, barrels, boxes or pails, min. C. L.
wt. 30,000 lbs. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .4. . . . B
Invoice value exceeding 10 cents per pound or value not
stated, in bags, barrels, boxes or pails. . . . . . . . . . . . . . . 1'

"Item No. 14 on the same page is as follows:

### 'Poultry Food:

*Ground Meat, dried, Ground Bone. Alfalfa Meal,*
*Cut Clover, Grain, whole or cracked, Grain Screen-*
*ings, Millet Screenings, Crushed Shells, Grit and*
*Charcoal:*

In bags, L. C. L. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
In bags, C. L. Min. Wt. 30,000 lbs. . . . . . . . . . . . . . . . . . . . . . B'

"If either of these items are applicable to the shipment in question, then the freight charges originally collected were insufficient, and the plaintiff is entitled to recover the difference between the two rates, being the amount prayed for in plaintiff's petition."

Proof was offered and received indicating that the common packing-house product known to the trade as "meat meal" is identical with the product manufactured and sold by Swift & Company under the name of "meat scraps." Meat meal and meat scraps are used to feed hogs and poultry, and there are coarse and fine grades of each. There was no evidence to the contrary, and the court directed the verdict.

On one side it is said that bulk, weight, value, risk, and like factors, furnish the true basis for freight classifications; that a mere difference in trade name of the same commodity does not authorize a difference in freight rates; and that because the commodity known as meat scraps is in fact identical with the

commodity known as meat meal, both are governed by the meat-meal item of the schedule. On the other side it is said that a tariff schedule, duly filed and published, has the force of a statute. If ambiguous, the court may interpret it, but when its meaning is ascertained it operates as law, which the court must apply as any other law. Meat meal is indexed by name. Animal and poultry foods not otherwise indexed by name are governed by a different rate. Meat scraps are nowhere mentioned, and consequently fall within the provision relating to animal and poultry foods not indexed by name.

The plaintiff is right in its contention that a tariff has the force of a statute, binding alike on shipper and carrier. (*Penna. R. R. Co. v. International Coal Co.*, 230 U. S. 184, 197.) There is no ambiguity in the tariff under consideration. When the name, meat scraps, originated does not appear. It cannot be assumed that the commodity, meat scraps, was not listed by that name because it was already listed under a different name, meat meal. In the case of *The Andrews Soap Co. v. P., C. & St. L. Ry. Co. et al.*, 4 I. C. C. 41, it was said:

"A manufacturer's description of an article to induce its purchase by the public also describes it for transportation, and carriers may accept his description for purposes of classification and rates. Carriers are not required to analyze freight to ascertain whether it is in fact inferior to the description or public representations under which it is sold, in order to give it a lower rate corresponding to its actual value." (syl. ¶ 1.)

Conceding that the defendants are right about what constitutes the proper basis for freight classifications, and that the identity of meat meal and meat scraps my afford good ground for modification of the tariff, the facts warranting modification must be ascertained and the modification made by the only tribunal having jurisdiction of the subject, the interstate commerce commission. Tariffs must be uniform, and cannot be enforced in terms, or not enforced in terms, according to the divergent views of different juries, based on testimony more or less illuminating, of witnesses more or less interested and informed. It is true that in this instance the testimony was all one way, but the court was not authorized to receive it. So long as the tariff stands, with the approval of the only body competent to change it, the courts can do nothing but enforce it.

The judgment of the district court is reversed, and the cause is remanded with direction to enter judgment for the plaintiff.