DONEY, APPELLANT, *v.* NORTHERN PACIFIC RY. CO. ET AL., RESPONDENTS.

(No. 4,338.)

(Submitted April 13, 1921.   Decided May 31, 1921.)

[199 Pac. 432.]

*Carriers—Railroads—Unjust Rates—Railroad Commission Act —Complaint—Insufficiency—Common Law—Presumptions — Right of Action—Saving Clause—Remedies—Procedure.*

Railroads—Unreasonable Rates—Railroad Commission Act—Remedies Exclusive—Complaint—Insufficiency.
1. *Held,* that the remedies prescribed by Chapter 37, Laws of 1907 (Rev. Codes, secs. 4363–4399), for recovery of damages caused by the exaction of discriminatory or unreasonable freight charges, are exclusive, and that therefore a complaint based upon the common-law remedy and drawn in entire disregard of the provisions of the statute did not state a cause of action, the common-law remedies having been superseded by said chapter.

Same—Complaint—Jurisdictional Allegation.

2.    Under section 4389, Revised Codes, an allegation that payment of alleged discriminatory or unreasonable freight charges was made in the county in which the action is brought is jurisdictional.

Same—Presumptions—Complaint—Insufficiency.

3.    Since the presumption obtains that the railroad commission fixed and established reasonable rates in obedience to section 4375, Revised Codes, and that the rate as established is in accordance with the approved and published tariff, a complaint which fails to allege that freight charges were not in accordance with such tariff is defective.

Same—Railroad Commission—Established Tariff has Effect of Statute.

4.    A tariff duly filed and published by the railroad commission has the force and effect of a statute and is binding alike upon the shipper and carrier, until modified by the tribunal authorized to change it.

Same—Railroad Commission Act—Remedies—Extent of Saving Clause.

5.    The provision of section 4398, Revised Codes, that the Railroad Commission Act shall not have the effect of releasing or waiving "any right of action * * * by any person for any right, penalty or forfeiture which may have arisen or may hereafter arise under any law of this state," etc., does not have the effect of saving the common-law remedy for recovery of excess freight rates, but refers to the remedies provided by the Act itself.

Same—Voluntary Reduction of Rates—Effect.

6.    The voluntary reduction of a rate by a carrier does not make the prior rate unlawful, unreasonable or discriminatory or the basis of an action for damages.

Same—Unjust Rates—Remedies—Procedure.

7.    A shipper deeming himself aggrieved by a rate fixed by the railroad commission because unjust, unreasonable or discriminatory, must proceed under section 4391, Revised Codes, if he desires to have it declared so; where no rate has been fixed or the one established is considered excessive, he must apply to the commission for investigation and determination of his contention, under section 4377, before he can maintain an action in the courts; and if his case is predicated upon freight charges made in excess of those fixed and established by the commission, his complaint must so allege and the action must be brought within twelve months from the date of payment, under section 4389.

*Appeal from District Court, Lewis and Clark County; W. H. Poorman, Judge.*

ACTION by Jabez Doney against the Northern Pacific Railway Company and the Butte, Anaconda & Pacific Railway Company. Judgment for defendants, and plaintiff appeals. Affirmed.

---

6.    What are unreasonable and unlawful discriminations by carriers, see note in 11 Am. St. Rep. 647.

7.    Matters to be considered by railroad commission in determining reasonableness of freight rates, see notes in Ann. Cas. 1916A, 8; Ann. Cas. 1918E, 1216.

*Messrs. Walsh, Nolan & Scallon,* for Appellant, submitted a brief and one in reply to that of Respondents; *Mr. Wm. Scallon* argued the cause orally.

The controlling, if not the only, question presented is whether an action for damages, like the present, or in latter-day parlance, an action for "reparation," may be maintained without showing a prior determination by the Railroad Commission. Plaintiff maintains the affirmative and contends that: At the time of the creation of the Railroad Commission, such a right of action existed: the Railroad Commission law has not taken away the right of action, nor the remedy by action; this law does not require a presentation to the commission of a claim for reparation; it does not give any power to the commission to grant reparation or to adjudicate or pass upon claims for damages; where a rate, unreasonable or discriminatory, has been corrected, and has gone out of existence, there is nothing over which the commission has any jurisdiction left, and nothing which can be brought before it, in so far as the past is concerned.

The action is not based on the Railroad Commission Law. Therefore, the Railroad Commission Law is in no manner a standard by which the sufficiency of the complaint is to be determined. That law makes no provision for any suit by a shipper for reparation, except where he is made to pay a rate in excess of that fixed by the commission. The action is based on the common law, the Constitution and the written law, other than the Railroad Commission Act.

Section 7, Article XV, of the Constitution declares that no discrimination in charges or facilities may be made between either places or persons. Therefore, no power exists anywhere to allow discrimination in charges or facilities or to impair the rule of equal rights. The legislature or the Railroad Commission, under the authority of the legislature, might make further prohibitions, if such were possible, but neither can restrict or limit the rules or prohibitions of the Constitution. Regardless, therefore, of the Railroad Commission Law, the rights

of the shippers in this respect are fixed. They were so fixed before the passage of the Railroad Commission Law. It seems self-evident, and, indeed, we do not understand that it is denied, that a shipper discriminated against would have a remedy by action, in the absence of the Railroad Commission Law. As we understand it, the defendant merely contends that the law takes the remedy away. At all events, we submit that the existence of such a right of action cannot be successfully denied. The common law gave the right of action in any case where a rate had been exacted from an individual which was unreasonable. That was the basis and the reason of the common-law action, whether the common-law action be regarded as existing only in cases where the charge was unreasonable or, also, whether the charge was discriminatory. In view of the constitutional provisions, it is not necessary to determine how extensive the common-law rules were, and whether they were limited to unreasonable charges, and whether or not they left unaffected discriminations between either persons or places. However, as to the common-law rule, its modern development and extension, we may refer to *Sullivan* v. *Minneapolis etc. Ry. Co.*, 121 Minn. 488, 45 L. R. A. (n. s.) 612, 142 N. W. 3; *Western Union Tel. Co.* v. *Call Pub. Co.*, 181 U. S. 92, 45 L. Ed. 765, 21 Sup. Ct. Rep. 561 [see, also, Rose's U. S. Notes]; Beale & Wyman's Railroad Rate Regulation, 1st ed., sec. 712 *et seq.;* Wyman's Public Service Corporations, secs. 1280–1292. This, however, may be said: Where the common-law rule was infringed, there was a right of action, and by parity of reasoning, where additional restrictions or obligations are imposed upon common carriers by the Constitution or the statute, or by judicial decisions regarding their common-law duties, an action would be the proper remedy where an individual is aggrieved.

The complaint shows that the rates complained of were unreasonable and also that they were discriminatory as against the plaintiff as a shipper of lumber, and as between plaintiff and other persons engaged in the same kind of business, and shipping to Butte Hill and between the places named. The

discrimination, therefore, resulted in a direct and individual damage to the plaintiff. For that, he could recover. (*Western Union Tel. Co.* v. *Call Pub. Co., supra.*)

There is nothing in the Railroad Commission Law that purports to affect our right of action. The only provision regarding complaints (sec. 4377) makes no reference whatever to reparation. It merely has to do with the justice and reasonableness of rates, *etc.*, and of such rates, *etc.*, made by the board itself. It would not apply to any rate not made or established by the board itself. The proposition that the Railroad Commission cannot grant reparation without express authority, either statutory or constitutional, does not seem to be open to question. The following cases seem decisive: *Santa Fe etc. Co.* v. *Atchison etc. Ry. Co.*, 21 N. M. 496, 155 Pac. 1093; *Murphy* v. *New York Cent. Ry.*, 170 App. Div. 788, 156 N. Y. Supp. 49.

The Act recognizes rights of action under the existing law and expressly provides, in effect, that no such action shall be affected by the Act. (Sec. 4398.) It is not necessary to argue the proposition that a pre-existing right of action is not destroyed by the creation of a statutory remedy different from the action, or even similar, unless the statute expressly, or by necessary implication, abolishes the right of action or the remedy by action. No such thing is done by this Act. We therefore assert the right to recover from a railroad company for unreasonable or discriminatory charges does not arise out of the Railroad Commission Law. Inasmuch as the law did not create the right, and did not provide for any action coextensive with the common law or constitutional right of action, this right is not destroyed, and such remedies as may be held to be provided for by the Railroad Commission Law are not exclusive. To hold under the statute, as it stands, that an application should be made to the commission before bringing suit in a case like this, would amount to a denial of justice and to a practical denial of the right of action.

There is a radical difference between such a law as ours and the Interstate Commerce Commission Law, as it now exists. Under the latter, reparation may be granted after hearing the carrier as well as the complainant. If not obeyed by the railway company, suit is brought upon the order. No other preliminary or intermediate action in court is necessary or allowed. (*Pennsylvania R. Co.* v. *Stineman C. M. Co.*, 242 U. S. 298, 61 L. Ed. 316, 37 Sup. Ct. Rep. 118.) Under a law of that kind, a system fairly logical and workable is established or can be evolved. This has been done by judicial determinations. No such thing can be done under ours.

The respondents in their brief admit that there is no provision in the Montana Railroad Commission Law giving power to the board to make rates retroactive or to allow reparation to a shipper. Notwithstanding this admission, respondents still insist that no action can be maintained by a shipper without first applying to the board, and applying, not for reparation, but for modification of the rate, and appealing to the court to review the determination of the board as to the rate, if dissatisfied with the ruling of the commission as to the rate. The supreme court of Washington, in a case decided after that of the *Hewitt Logging Co.* v. *Northern Pacific Ry. Co.*, 97 Wash. 597, 3 A. L. R. 198, 166 Pac. 1163, cited and relied upon by respondents, *viz., Belcher* v. *Tacoma Eastern R. Co.*, 99 Wash. 34, 168 Pac. 782, 786, in referring to its decision in the last-mentioned case and to the conclusion therein reached, said: "It would be puerile to hold that the claim was barred for failure to present it to the commission, if that body would have had no authority to  entertain it, had it been submitted to their consideration." So here it would be puerile to say that a claim for reparation should have been presented to the commission when it had no power to entertain such a claim.

*Messrs. Gunn, Rasch & Hall*, for Respondent, Northern Pacific Railway Company, and *Mr. L. O. Evans, Mr. W. B. Rodgers* and *Mr. D. M. Kelly*, for Respondent Butte, Anaconda

& Pacific Railway Company, submitted a brief; *Mr. E. M. Hall* argued the cause orally.

Does the complaint state facts sufficient to constitute a cause of action on the theory that the rates charged were in excess of the tariffs in force? Section 4389, Revised Codes, provides for actions by any person or shipper against the railroad to recover amounts paid to any railroad "in excess of the rates, tolls or charges fixed and established by the board for such services." This section further provides that such action shall be brought in the district court of the county in which the payment was made and "shall be brought within twelve months from the date of such payment." If the plaintiff claims that the rate from Evaro and Schley was fixed by the Railroad Commission at ten cents per hundred pounds and that the defendants collected an amount in excess of such rate, then his action would be under the above section, and the complaint fails to allege that the payment was made in Lewis and Clark county, and also fails to allege that the action was brought within twelve months from the date of such payment. Payment in this county is necessary in order to give the court jurisdiction of the subject of the action in this county. The time within which the action must be brought under the above section is not a mere statute of limitation, but is of the essence of the right itself, and one who seeks to enforce such right must show affirmatively in his complaint that he has brought his action within the time fixed by the statute. (*Hewitt Logging Co.* v. *Northern Pac. Ry. Co.,* 97 Wash. 597, 3 L. R. A. 198, 166 Pac. 1153; *Dolenty* v. *Broadwater County,* 45 Mont. 261, 122 Pac. 919; *Atlantic Coast Line R. Co.* v. *Burnette,* 239 U. S. 19, 60 L. Ed. 226, 36 Sup. Ct. Rep. 75.)

The Railroad Commission Law of Montana covers the questions of rates, rebates, discriminations, unjust and unreasonable rates and other matters relating to intrastate shipments in this state, and makes the railway commission the rate-fixing body and the tribunal to first determine the questions of discrimination or unreasonableness of rates instead of the railroad

companies or the courts. The board's orders are final and conclusive as to orders affecting rates or charges. (*State ex rel. Board of Railroad Commrs.* v. *District Court,* 53 Mont. 229, 163 Pac. 115.) No provision is found in said Act giving the Board power to make rates retroactive, nor is there any express provision in said Act authorizing the board, in the event that it determines under section 4377, or the court determines under section 4384 or 4391, that any rate fixed by the board is unjust or unreasonable, to allow reparation to the shipper for the amount paid during the time such rate as fixed by the board was in force. Under the Montana law, until a rate is modified or canceled by the commission or the court, it is a valid rate, and a shipper cannot recover freight based on such valid rate during the time it was in effect. The shipper's remedy is to promptly have the rate modified, if unreasonable, by the commission or by the court in actions to review the determination of the board. (*Frank A. Graham Ice Co.* v. *Chicago, M. & St. P. Ry. Co.,* 153 Wis. 145, 140 N. W. 1097; *Northern Pac. Ry. Co.* v. *Solum,* 247 U. S. 477, 62 L. Ed. 1221, 38 Sup. Ct. Rep. 550.) Our statute differs from the federal Act in that under the latter Act the Interstate Commerce Commission is expressly authorized to order the railroad to pay to the complainant the sum it may find he has been damaged by reason of an unjust rate or discrimination in violation of the Act. (See secs. 8581–8584, U. S. Comp. Stats. 1916.) Under the Interstate Commerce Act, when a person seeks to recover back money which it is claimed he was required to pay in excess of some established interstate rate, or where he seeks to recover damages for discrimination practiced against him, or whenever he attacks the reasonableness of a rate, he is required to present his claim to the Interstate Commerce Commission for examination and adjustment before he can bring an action in the courts, notwithstanding the provisions of section 22 of said Act, that nothing herein "contained shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this Act are in addition

to such remedies." (*Robinson* v. *Baltimore-Ohio R. Co.*, 222 U. S. 506, 56 L. Ed. 288, 32 Sup. Ct. Rep. 114; *Mitchell Coal & Coke Co.* v. *Pennsylvania Ry. Co.*, 230 U. S. 247, 57 L. Ed. 1472, 33 Sup. Ct. Rep. 916; *Howard Supply Co.* v. *Chesapeake & Ohio Ry. Co.* (C. C.), 162 Fed. 188; *Franklin* v. *Philadelphia etc. Ry. Co.* (D. C.), 200 Fed. 134; *United States* v. *Merchants' & M. Traffic Assn.*, 242 U. S. 178, 61 L. Ed. 233, 37 Sup. Ct. Rep. 24.) The reasoning in the above cases applies with equal force to our statute and to the lack of jurisdiction of the courts to pass upon the reasonableness of the rates and discriminations before the commission has taken action thereon. In other words, before any shipper can recover in the courts damages for excess rates or discriminations, the discrimination or reasonableness of the rate must first be passed upon by the special tribunal expressly created and authorized by law to handle such matters. The fact that the Railroad Commission is not authorized, upon determining that a rate is unreasonable or discriminatory, to order reparation, does not prevent a shipper, after the rate has been so determined by the special tribunal created for that express purpose, from maintaining an action in court to recover damages sustained by him as a result of such unreasonableness or discriminatory rate. His action would be based upon the fact that such rate had been so declared by the proper tribunal, and the court would merely determine the amount of damages, if any, sustained. The cases of *Santa Fe etc. Min. Co.* v. *Atchison etc. Ry. Co.*, 21 N. M. 496, 155 Pac. 1093, and *Murphy* v. *New York Cent. Ry.*, 170 App. Div. 788, 156 N. Y. Supp. 49, cited by appellant, in no way conflict with the above proposition.

Of course a voluntary reduction of a rate by a carrier would not make the prior rate unlawful, unreasonable or discriminatory and the basis for an action for damages.

Wisconsin has a railway commission law very similar to that of this state, and the supreme court of Wisconsin has held that a shipper must first present his claim to the Railway Commission for the reasonableness of the rate to be determined by

that board before he can maintain an action in court. (*Frank A.
Graham Ice Co.* v. *Chicago, M. & St. P. Ry. Co.*, 153 Wis. 145,
140 N. W. 1097; see, also, *Hewitt Logging Co.* v. *Northern
Pac. Ry. Co.*, 97 Wash. 597, 3 L. R. A. 198, 166 Pac. 1153;
*Manufacturers' Ry. Co.* v. *United States*, 246 U. S. 457, 62
L. Ed. 831, 38 Sup. Ct. Rep. 383; *State ex rel. City of Billings*
v. *Billings Gas Co.*, 55 Mont. 102, 173 Pac. 799; *Beadle* v.
*Kansas City etc. R. Co.*, 51 Kan. 248, 32 Pac. 910; *Windsor
Coal Co.* v. *Chicago & A. R. Co.* (C. C.), 52 Fed. 716.)

Notwithstanding the fact that the legislature has created a
special tribunal to regulate and determine railroad rates, facili-
ties, discriminations, *etc.*, in this state, and enacted legislation
providing the procedure to be followed and the remedies ap-
plicable for the enforcement of the rights of shippers, as de-
fined in section 7, Article XV, of the Constitution, and for the
purpose of making these provisions of the Constitution more
effective, speedy and certain, the appellant contends that he
can wholly ignore this tribunal and this legislation and pro-
ceed as if no Railroad Commission Law had ever been enacted.

The above provision of the Constitution merely prohibits the
charging of a greater amount for a shorter haul when the
transportation is limited to the carrier's own line. It has been
repeatedly held that such a prohibition against charging a
greater amount for a short haul than is charged for a long
haul has no application to rates relating to transportation ex-
tending over more than one line, that is, to joint rates. (*E. R.
Darlington Lumber Co.* v. *Missouri Pac. Ry. Co.*, 243 Mo. 224,
147 S. W. 1052; *Atchison etc. Ry. Co.* v. *Denver etc. Ry. Co.*,
110 U. S. 667, 28 L. Ed. 291, 4 Sup. Ct. Rep. 185; *Common-
wealth* v. *Chesapeake & O. Ry. Co.*, 115 Ky. 57, 72 S. W.
361; *Chicago & Northwestern Ry. Co.* v. *Osborne*, 52 Fed. 912,
3 C. C. A. 347; *United States* v. *Mellen* (D. C.), 53 Fed.
229; *Parsons* v. *Chicago & N. W. Ry. Co.*, 63 Fed. 903, 11
C. C. A. 489; affirmed in 167 U. S. 447, 42 L. Ed. 231, 17
Sup. Ct. Rep. 887; *Interstate Commerce Commission* v. *Cin-
cinnati etc. Ry. Co.*, 56 Fed. 925.)

As neither the common law nor our statute (sec. 4386) gives a right of action against a railroad for discrimination, such as plaintiff alleges, when the rate is a joint rate, instead of a rate confined to "its route or line," it follows that the complaint does not state a cause of action under our Constitution or the common law, as it expressly alleges that this freight was handled over the lines of two different routes.

MR. JUSTICE GALEN delivered the opinion of the court.

This action was brought by the plaintiff to recover damages for alleged discriminatory and unreasonable freight charges collected by the defendants on certain lumber shipments. Separate general demurrers were interposed by each of the defendants to the plaintiff's second amended complaint, which were sustained by the lower court and judgment entered dismissing such complaint. The appeal is from the judgment.

Three specifications of error are assigned by the plaintiff, involving but one question, viz.: Does the complaint state facts sufficient to constitute a cause of action? The second amended complaint, after alleging the corporate character of the defendants and the ownership and operation by the Northern Pacific Railway Company as a common carrier of a railroad between the stations of Evaro and Schley, in Missoula county, of St. Regis, in Mineral county, of Hamilton, in Ravalli county, and of Rocker, Butte, and Butte Hill, in Silver Bow county, and the operation by the Butte, Anaconda & Pacific Railway Company of a railroad between Anaconda, Rocker, Butte and Butte Hill, alleges as follows:

"III. That the plaintiff, during the year 1914, was engaged in the business of shipping lumber and various articles of lumber from the said stations of Evaro and Schley to Butte and Butte Hill aforesaid.

"IV. That at all times in question herein, and particularly on and between the eighteenth day of April and the twenty-fourth day of November, in the year 1914, the said defendant Northern Pacific Railway Company received for transportation

and undertook to transport and deliver, or cause to be delivered, freight generally and particularly lumber and articles made of lumber, from all of the stations hereinafter mentioned on the line of the railroad of the Northern Pacific Railway Company to points on Butte Hill aforesaid, by transporting the same over its own line to the said station of Rocker on the line of the Butte, Anaconda & Pacific Railway Company, and there delivering the same to the Butte, Anaconda & Pacific Railway Company for transportation from Rocker and delivery at points on Butte Hill aforesaid, and that there was a connection between the said lines at Rocker.

"V. That on the eighteenth day of April, 1914, and the twenty-eighth day of November, 1914, and between the said dates, the said plaintiff delivered to the defendant Northern Pacific Railway Company, at the said stations of Evaro and Schley, for shipment from the said stations to Butte Hill, sundry quantities of lumber, to-wit, of the kind of lumber used in and around mines and designated mining timbers and stulls, amounting in the aggregate to 163 carloads, and that the same were shipped and transported in carload lots from the said stations of Evaro and Schley.

"VI. That the said defendant, as common carrier, accepted and received the said lumber from said plaintiff at the times and places hereinbefore mentioned, and undertook to transport the said lumber and cause it to be delivered and did transport the said lumber, and cause it to be delivered to a corporation known as the Butte & Superior Copper Company, Limited, at a point on Butte Hill; that the said defendant Northern Pacific Railway Company caused the said lumber to be delivered, as aforesaid, by transferring the same to the defendant Butte, Anaconda & Pacific Railway Company at the said station of Rocker; and that from said point the cars on which said lumber was loaded were hauled by the said defendant Butte, Anaconda & Pacific Railway Company and the lumber thereon delivered by it to the said consignee.

"VII.  That the freight on said lumber was payable by plaintiff, that is to say, that the said plaintiff had agreed with the said consignee to deliver the lumber to the latter on Butte Hill at a price which included the freight, and that the said freight was payable at the point of delivery to the consignee.

"VIII.  That the said defendants exacted from the said plaintiff, through the said consignee, and demanded and required payment of freight on said lumber as a condition of the delivery thereof, at the rate of eleven and one-half cents per 100 pounds, and the said plaintiff, through his said consignee, paid the freight therefor at said rate, and that the freight thus paid by the said plaintiff for the said lumber amounts in the aggregate to the sum of $11,157.01; that the said freight, to-wit, the moneys paid for the said freight charges, was paid to and collected by the defendant Butte, Anaconda & Pacific Railway Company.

"IX.  That out of the said moneys so collected, the said Butte, Anaconda & Pacific Railway Company retained for its share the sum of one and one-half cents per 100 pounds; and that its charge for its services in the transportation and delivery of the said lumber was one and one-half cents per 100 pounds; and that the remainder of the moneys so collected for said freight, as aforesaid, was paid over by the Butte, Anaconda & Pacific Railway Company to the Northern Pacific Railway Company, and received and retained by it.

"X.  That the Butte, Anaconda & Pacific Railway Company, in collecting the said freight, as aforesaid, from the plaintiff, through the said consignee, was acting as the agent of the Northern Pacific Railway Company, as well as for itself.

"XI.  And the plaintiff further alleges that the said rate of freight charged and collected from the plaintiff, as aforesaid, was excessive and unreasonable, and that it was excessive and unreasonable to the extent of one and one-half cents per 100 pounds in the case of any and every carload exceeding 60,000 pounds in weight and in the case of every carload of less than 60,000 pounds in weight, said rate was excessive and unreason-

able to the extent that the charge made for such carload exceeded $60, and that on every carload of the freight hereinbefore referred to, more than $60 was collected.

"XII. That said rate was also discriminatory as against the plaintiff, and as between the plaintiff and other persons engaged in the same kind of business, and shipping similar articles over defendants' roads to the said point in similar circumstances, and even from greater distances, to-wit, from Hamilton and St. Regis aforesaid, and that, thereby, such other persons were given a preference over the plaintiff to the extent of said excessive rates; that the said rate was also discriminatory to said extent as against the said stations of Evaro and Schley, and as between the said stations and the said stations of Hamilton and St. Regis, and that it was necessary for the plaintiff to ship the said lumber from the said stations of Evaro and Schley.

"XIII. That the rate charged by and collected for and received by the Northern Pacific Railway Company for the transportation of the said lumber to Rocker and its delivery there to the Butte, Anaconda & Pacific Railway Company was also excessive, unreasonable and discriminatory as aforesaid.

"XIV. That the charge made and collected, as aforesaid, by the Butte, Anaconda & Pacific Railway Company for the transportation of lumber shipped by plaintiff, as aforesaid, was the regular rate charged by said defendant on similar articles of lumber delivered to it in carload lots at Rocker by the Northern Pacific Railway Company for delivery at Butte Hill, and that the said charge was made without any reference to the point of origin on the Northern Pacific Railway of the freight so transported; that the excessive charge over and above a reasonable rate or charge and the discrimination in charges hereinbefore set forth were in the charge made by the Northern Pacific Railway Company and the amount received by it for transportation of the said lumber to Rocker and the transfer there to the Butte, Anaconda & Pacific Railway Company.

"XV. That a rate or charge on said lumber, for handling and transporting the same from either Evaro or Schley aforesaid to Rocker and delivering the same at Rocker to the Butte, Anaconda & Pacific Railway Company, of eight and one-half cents per 100 pounds, in case of carloads in excess of 60,000 pounds and in case of carloads of 60,000 pounds or of a lesser weight, a total charge of $51 per car, would have been, respectively, a reasonable and sufficient rate to have charged therefor, and that such rates or charges were the highest reasonable rates to charge therefor, and that everything above them, or either of them, charged during said period to the plaintiff, was unjust, excessive, unreasonable and discriminatory, as hereinbefore more fully alleged.

"XVI. And plaintiff avers, on his information and belief, that during the whole of the said period, to-wit, on and between the aforesaid dates, the defendant Northern Pacific Railway Company was transporting and causing to be delivered by the Butte, Anaconda & Pacific Railway Company similar articles in similar circumstances and to all points on Butte Hill from Hamilton aforesaid, and for shippers shipping from Hamilton, for ten cents per 100 pounds, and from St. Regis aforesaid, and for shippers shipping from St. Regis, for eleven cents per 100 pounds; that the said rates were for carloads and were accompanied with a minimum requirement of 60,000 pounds; that is to say, that if the load actually shipped was less than 60,000 pounds, the defendants would collect as for 60,000 pounds; that the rate of ten cents per 100 pounds with a minimum requirement weight of 60,000 pounds per car would have been a sufficient rate to have charged from said stations of Evaro and Schley to Butte Hill and to said point of delivery to said consignee, and from each of them, and was the highest rate that could reasonably have been charged therefrom, and that everything above that charged during the said period to the plaintiff was unjust, excessive, unreasonable, and discriminatory.

"XVII.   That the said station of Hamilton is situated on a branch road operated by the said Northern Pacific Railway Company and leaving the main line of the said Northern Pacific Railway Company's road at Missoula, Mont., and said station of St. Regis is on another branch road operated by said Northern Pacific Railway Company and departing from its main line west of Missoula; that the said stations of Evaro and Schley are situated on the main line of the Northern Pacific Railway Company and west of Missoula; that the distance from either of said last-named stations to Missoula is less than the distance from Hamilton to Missoula and less than the distance from St. Regis to Missoula, to-wit, that Hamilton is distant by said railroad forty-eight miles from Missoula; that St. Regis is distant from Missoula by said railroad seventy-eight miles; that Evaro and Schley are distant respectively from Missoula seventeen and twenty-two miles; that all freight going from Hamilton and St. Regis, as well as from Evaro and Schley and other points on the main line and branches of the road of the Northern Pacific Railway Company, and destined for Butte Hill, had to pass, and did pass, during the period in question, through the same yard of said defendant at Missoula, and that Rocker and Butte Hill are situated east of Missoula.

"XVIII.   That no conditions or circumstances existed in favor of St. Regis or Hamilton as against either Evaro or Schley as a shipping point, and that no conditions or circumstances existed at Evaro or Schley or between either of said points and Missoula that would make it more expensive to handle or transport freight from these points, or that would, in any manner, require or justify a higher rate of freight, and that no greater service or different service was rendered to the plaintiff in connection with the transportation of said lumber by the defendants, or either of them, than was rendered by them, and each of them, to shippers of similar articles of lumber from Hamilton or St. Regis, and the said discrimination in rates between the said points and the plaintiff and shippers shipping

from Hamilton or St. Regis was unjust and not based upon any fact or condition justifying any difference in rates.

"XIX.   Plaintiff further alleges that on or about the fifteenth day of January, 1915, the said defendants reduced the rate on lumber from said stations of Schley and Evaro, to-wit, on such lumber as had been shipped by plaintiff as aforesaid, to ten cents per 100 pounds, the other conditions remaining the same, and put into effect a schedule at the rate of ten cents per 100 pounds, as aforesaid; that thereby the rates from the said stations were put on an equality with the rates from Hamilton aforesaid, and reduced one cent below the St. Regis rate then in force, and that these reduced rates so established on January 15, 1915, have ever since, up to and including the time of the commencement of this action, remained in force.

"XX.   That neither of said defendants was ever authorized by the Board of Railroad Commissioners of the state of Montana to make, charge, or receive any higher rate, either jointly or severally, from Evaro or Schley aforesaid to Rocker or Butte Hill than from Hamilton or St. Regis to Rocker or Butte Hill, or to make any discrimination in rates between Evaro or Schley and either Hamilton or St. Regis, to any point east of Missoula, by making lesser rates from Hamilton or St. Regis or otherwise.

"XXI.   That the said defendants have collected and received, as aforesaid, excessive charges amounting in the aggregate to more than $1,070.21, and that the charges over and above ten cents per 100 pounds where the weight of the load exceeded 60,000 pounds, and in excess of $60 per car where the weight of the load was 60,000 pounds or less, amount to $1,070.21; that the amount collected, as aforesaid, from the plaintiff for each of said cars and loads, together with the numbers of the cars used in transporting the said lumber and the weight of each car, as well as the amount of the whole charge, are shown in a statement thereof annexed to this complaint marked 'Exhibit A' and made a part hereof, the same as if fully set forth herein.

"XXII. Plaintiff avers, on his information and belief, that payment of said sum to the plaintiff has been demanded on behalf of the plaintiff, but that the defendants have refused, and still refuse, to pay the same, or any part thereof."

The prayer is for judgment in the sum of $1,070.21, together with interest from the twenty-eighth day of November, 1914, and costs of suit.

We must confess our inability to clearly follow the argu-
[1] ment advanced by plaintiff's learned counsel. After a careful review of the record and of the briefs, and examination of the authorities cited, it is clear to us that the lower court was correct in sustaining the demurrer to the complaint, as it is attempted to plead a cause of action in utter disregard of the Railroad Commission Law. (Chap. 37, Laws 1907.) In defining their theory of the action, counsel for the plaintiff assert that it "is not based on the Railroad Commission Law. Therefore the Railroad Commission Law is in no manner a standard by which the sufficiency of the complaint is to be determined. * * * The complaint does not allege that the commission had fixed a rate and that defendants charged more than that rate." They contend that the action is based "on the common law, the Constitution, and the written law," rather than the Railroad Commission Law. Section 7 of Article XV of the Constitution, relied upon by the plaintiff, reads in part as follows:

"All individuals, associations, and corporations shall have equal rights to have persons or property transported on and over any railroad, transportation or express route in this state. No discrimination in charges or facilities for transportation of freight or passengers of the same class shall be made by any railroad, or transportation, or express company, between persons or places within this state; but excursion or commutation tickets may be issued and sold at special rates, provided such rates are the same to all persons. No railroad or transportation, or express company shall be allowed to charge, collect, or receive, under penalties which the legislative assembly shall pre-

scribe, any greater charge or toll for the transportation of freight or passengers to any place or station upon its route or line, than it charges for the transportation of the same class of freight or passengers to any more distant place or station upon its route or line within this state."

Under this provision, it is contended by the plaintiff: "A shipper from Evaro and Schley could not be subjected to any discrimination in charges or facilities, and as between Hamilton or St. Regis and Evaro and Schley, no discrimination is allowable." Granting plaintiff's contention, the language employed in the Constitution clearly indicates that there shall be legislation on the subject, and the legislature in 1907 having provided for a Board of Railroad Commissioners ('Chap. 37, Laws 1907), and prescribed its powers, duties and functions, in the fixing of reasonable freight rates and the prevention of discrimination by independent carriers as well as joint carriers, its provisions are, in our opinion, exclusive in so far as plaintiff's alleged rights involved are legislated upon, and the remedies thereby prescribed must be followed. Were there no statute covering the subject, the plaintiff's contention for the existence of a common-law remedy would be deserving of serious consideration; but since whatever common-law remedies may have been available prior to the enactment of the statute have been superseded thereby, we must now look alone to existing legislation covering the subject. The "written law" relied upon by the plaintiff is the statutory law, and upon reference thereto it appears that plaintiff's exclusive remedy is by compliance with the provisions of section 4377 or 4389 of the Revised Codes, and he does not allege to have done or pretended to have done either, so that in our opinion the complaint does not state a cause of action upon any theory. It is our view that the statute creating the Board of Railroad Commissioners, enacted in 1907, and now embraced in sections 4363 to 4399, inclusive, of the Revised Codes, is *prima facie* within the constitutional limitations above quoted respecting the fixing of tariffs on freight shipments over various lines within the state

of Montana, and joint tariffs as regards connecting lines, and the prevention of discrimination in the rates charged and collected. If the contention of plaintiff be correct, then the Railroad Commission Law is a nullity, but question concerning its constitutionality is not raised on this appeal, and in the absence thereof, it will be conclusively presumed to be constitutional.

In paragraph XX of the complaint, it is alleged that the defendants were never authorized by the Board of Railroad Commissioners to make, charge or receive, either jointly or severally, a higher rate from Evaro or Schley to Rocker or Butte Hill than from Hamilton or St. Regis to Rocker or Butte Hill, or to make discrimination in rates between Evaro or Schley and from Hamilton or St. Regis to any point east of Missoula, by making lesser rates from Hamilton to St. Regis; but it is apparent that this allegation is not predicated on section 4389, Revised Codes, as it is not alleged that the amount paid to and collected by the defendants was in excess of the rates fixed and established by the Railroad Commission, and if it be plaintiff's claim that the rate from Evaro and Schley was fixed by the Railroad Commission at ten cents per hundred pounds, and that the defendants collected in excess of such rate, then his action would be under [2] the above section and the complaint fails to allege that the payment was made in Lewis and Clark county, and also fails to allege that the action was brought within twelve months from the date of such payment. Payment in Lewis and Clark county was necessary to give the court of that county jurisdiction in the first instance. (*Hewitt Logging Co.* v. *Northern Pacific Ry. Co.*, 97 Wash. 597, 3 A. L. R. 198, 166 Pac. 1153; *Atlantic Coast Line R. Co.* v. *Burnette*, 239 U. S. 199, 60 L. Ed. 226, 36 Sup. Ct. Rep. 75; *American Ry. Co.* v. *Coronas*, 230 Fed. 545, L. R. A. 1916E, 1095, 144 C. C. A. 599; *Corico* v. *Smith*, 97 Misc. Rep. 447, 161 N. Y. Supp. 293; *Bemett* v. *Grand Rapids & I. R. Co.*, 194 Mich. 64, L. R. A. 1917E, 322, 160 N. W. 424; *A. J. Phillips Co.* v. *Grand Western Trunk Ry.*

*Co.,* 236 U. S. 663, 59 L. Ed. 774, 35 Sup. Ct. Rep. 444.) Clearly this allegation does not predicate plaintiff's right of recovery of the amount paid the defendants in excess of the rate established by the Board of Railroad Commissioners for such service upon the provisions of this section. However, further consideration of the effect of this allegation becomes unnecessary in view of the express waiver on the part of counsel of any reliance whatsoever upon the Railroad Commission Law.

Section 4375, Revised Codes, provides: ''The power and [3] authority is hereby vested in the [State] Board and it is made its duty to adopt as soon as practicable after the organization of the board, all necessary rates, charges and regulations to govern and regulate freight and passenger tariffs. * * * Said board shall also have the power and it shall be its duty, to fix and establish for all or any connecting lines of railroad in this state reasonable joint rates of freight charges,'' *etc.* The presumption is ''that official duty has been regularly performed.'' (Sec. 7962, subd. 15, Rev. Codes; *Beck* v. *Holland,* 29 Mont. 234, 74 Pac. 410; *Burton* v. *Kipp,* 30 Mont. 275, 76 Pac. 563; *Grant* v. *Williams,* 54 Mont. 246, 169 Pac. 286; *Stephens* v. *Conley,* 48 Mont. 352, Ann. Cas. 1915D, 958, 138 Pac. 189; *State* v. *Groom,* 49 Mont. 354, 141 Pac. 858; *Grant* v. *Williams,* 54 Mont. 426, 171 Pac. 276.)

It is also to be presumed that the law has been obeyed. (Sec. 7962, subd. 33, Rev. Codes; *Kerr* v. *Blaine,* 49 Mont. 602, 144 Pac. 566; *State* v. *Hopkins,* 54 Mont. 52, Ann. Cas. 1918D, 956, 166 Pac. 304.)

Sections 4385, 4386 and 4392, Revised Codes, impose heavy penalties on railroads for charging greater or less rates than those fixed by the Railroad Commission, and the presumption is that a railroad in charging a rate has complied with the law, and that the rate is in accordance with the published and approved tariff established by the Railroad Commission. *(Cincinnati etc. R. Co.* v. *Rankin,* 241 U. S. 319, L. R. A.

1917A, 265, 60 L. Ed. 1022, 36 Sup. Ct. Rep. 555; *New York Cent. & Hudson River R. Co.* v. *Beaham,* 242 U. S. 149, 61 L. Ed. 210, 37 Sup. Ct. Rep. 43.)

In *Charles H. Lilly Co.* v. *Northern Pacific Ry. Co.,* 64 Wash. 589. 117 Pac. 401, the plaintiff alleged unjust and illegal discrimination in rates and sought recovery of the excess paid by him. The court sustained the demurrer to the complaint because it failed to allege that the carrier had not complied with the provisions of the Act to regulate commerce. The court said: "It will be observed that the appellant does not allege that the carrier had not complied with the provision of the Act to regulate commerce with reference to filing a schedule of rates, nor does it allege that by the rate charged it exceeded the rate shown on the schedule. Since there is no allegation of a violation of the law in these respects it will be presumed there was no such violation."

The allegations of the second amended complaint are wholly insufficient to show that the freight charges paid by plaintiff upon shipments made by him were not in accordance with tariffs adopted and in force between such points at the time the shipments were made. A tariff duly filed and published [4] has the force and effect of a statute, binding alike upon the shipper and carrier until modified by the tribunal authorized to change it. (*Atchison, Topeka & S. F. Ry. Co.* v. *Young,* 102 Kan. 875, 171 Pac. 1156; *Pennsylvania Ry. Co.* v. *International Coal Co.,* 230 U. S. 184, Ann. Cas. 1915A, 315, 57 L. Ed. 1446, 33 Sup. Ct. Rep. 893.) The allegations of the complaint being insufficient to show that the lumber was not shipped under a duly adopted tariff then in force and effect, does the complaint state facts sufficient to constitute a cause of action, on the theory that the rates charged were in excess of the tariff in force? Section 4389 of the Revised Codes provides for action by any person or shipper against the railroad to recover amounts paid to any railroad "in excess of the rates, tolls or charges fixed and established by said board for

such services." This section further provides that such action shall be brought in the district court of the county in which the payment was made and "shall be brought within twelve months from the date of such payment."

Plaintiff cites and further relies upon section 4398, Re-
[5] vised Codes, which reads as follows: "This Act shall not have the effect to release or waive any *right* of action by the state or any person for any *right,* penalty or forfeiture which may have arisen, or may hereafter arise, under any law of this state, and all penalties accruing under this Act shall be cumulative to each other, and a suit for or recovery of one, shall not be a bar to the recovery of any other penalty." While this section provides that "the *right* of action by the state or any person for any *right,* penalty or forfeiture which may have arisen, or may hereafter arise, under any law of this state," *etc.,* it does not declare that the remedies for enforcing such rights are not to be governed by the Railroad Commission Law.

Section 4398, Revised Codes, differs in this respect from the provisions in the Interstate Commerce Act (sec. 8595, U. S. Comp. Stats. 1916; 24 Stat. 387), which provides: " * * * Nothing in this Act contained shall in any way abridge or alter the *remedies* now existing at common law or by statute, but the provisions of this Act are in addition to such remedies."

The state of Washington in its Public Service Commission Law has a section the same as section 4398 of our statute. In the case of *Hewitt Logging Co.* v. *Northern Pacific Ry. Co., supra,* the court in an instructive opinion construed this provision, and among other things said: "We may grant that the Constitution declares the common law, but it does not follow that the legislature may not occupy its acknowledged field and define procedures and fix limitations upon the assertion of the right preserved. The 'Public Service Commission Law' does not assume to take away the common-law right of action. The legislature has accepted the declaration of the Constitu-

tion at its full worth, and has by a complete statute endeavored to avoid all of the annoyances and collateral questions attending the assertion of the common-law remedy, such as the reasonableness of the rate in and of itself, and its reasonableness when compared to another rate, the character and extent of service, the attending circumstances, and the measure of recovery which it is said was never defined at common law [citing cases], and which it is said with equal gravity was as certain as a recovery can be upon an implied contract to pay money [citing cases].

"To define procedure, to make a condition precedent, and to fix a limitation does not destroy the force of the Constitution. On the contrary, a law so providing makes it efficient, certain, and uniform in its operation. The substantive right remains; that is, all the citizen can insist upon, for it is held, under authority without limit, that no litigant has a vested right in procedure so long as his right of action is not abolished.   *   *   *

"To say that it is beyond the power of the legislature to provide for an inquiry by a board skilled in the technical science of freight and passenger rates as a prerequisite to the institution of a suit, and within a definite time, would be to assert the indefensible principle that the legislature could not pass any law of procedure where a right of action existed at common law. That the legislature intended to save all substantive rights is made plain by the Act itself. Section 104 provides: 'This Act shall not have the effect to release or waive any right of action by the state or any person for any right, penalty or forfeiture which may have arisen or may hereafter arise under any law of this state. *   *   *   *  '

"And section 111 evidences the legislative intent that all actions brought after the passage of the Act should be governed by the terms of the Act in so far as it defined procedure. Section 111 saves only pending actions, while section 104 saves all substantive rights then accrued or thereafter to accrue. The object of the law was to fix a certain procedure,

applicable to all cases, and to avoid the confusion that would follow a holding for appellant. * * *

"The Act to regulate commerce preserves existing rights and remedies; the Public Service Commission Law preserves rights but not remedies except as to cases then pending."

See, also, *Graham Ice Co.* v. *Chicago, M. & St. P. Ry. Co.*, 153 Wis. 145, 140 N. W. 1097, construing the Railroad Commission Law of Wisconsin, section 34 of which is the same as section 4398 of our law; in which decision the court said: "It is insisted that section 34, Chapter 362, Laws of 1905, hereinbefore set out, was intended by the legislature to preserve the common-law remedy. It is true that this provision is quite broad, but in view of other parts of the Railroad Commission Law heretofore referred to we are convinced that it was not intended by the legislature to save the common law remedy to the extent of allowing the schedule rate to be attacked in a common-law action. This, we think, appears clearly from the legislation on the subject heretofore referred to. * * *

"In the case at bar there was no application by appellant to the Railroad Commission to change the schedule rates which rates are claimed to be excessive. The schedule rates must, therefore, in the present action be regarded as the lawful rates. * * * Moreover, as before observed, the legislature has the right within constitutional bounds to fix rates and a remedy by action against the Railroad Commission is preserved in favor of any aggrieved party, so the rights of all parties are well guarded under the law."

Our Railroad Commission Law covers the questions of rates, rebates, discriminations, unjust and unreasonable rates, and other matters relating to intrastate shipments, and makes the Railroad Commission the rate-fixing body and the tribunal to first determine the questions of discrimination or unreasonableness of rates instead of the railroad companies or the courts.

Section 4390, Revised Codes, provides that any railroad may bring an action against the Board of Railroad Commissioners in the district court to determine whether or not any rate, classification, *etc.,* fixed or established by the board, is just and reasonable.

Section 4391 gives the same remedy to any shipper and provides that he may bring an action in the district court of the county where the principal office or place of business of such railroad is situated or in any county where any classification, rate, toll, charge, regulation or order of the board is applicable, against the Board of Railroad Commissioners as defendants, to determine whether or not any such classification, rate, *etc.,* is just and reasonable. This section further provides: "That until the final decision in any such action, the classification, rate, toll, charge, regulation or order of the board affecting rates or charges shall be deemed to be final and conclusive; except as herein otherwise provided." And this section further provides: "That in any action, hearing or proceeding in any court, the classifications, rates, tolls, charges, regulations and orders made, fixed and established by said board shall *prima facie* be deemed to be just, reasonable and proper."

The board's orders affecting rates or charges are to be deemed *prima facie* just and reasonable and the court in modifying or setting them aside should exercise its discretion with reserve and caution. (*State ex rel. Board of Railroad Commrs.* v. *District Court,* 53 Mont. 229, 163 Pac. 115.) No provision is found in said Act giving the board power to make rates retroactive, nor is there any express provision in the Act authorizing the board, in the event that it determines under section 4377, or the court determines under section 4384 or 4391, that any rate fixed by the board is unjust or unreasonable, to allow reparation to the shipper for the amount paid during the time such rate as fixed by the board was in force. The rate established by the board being *prima facie* a valid and reasonable rate, presumption as to its validity and reasonableness will be indulged, until its unreasonable or dis-

criminatory character is found by the board itself. Upon change made in the rate by action of the board, this presumption ceases. No cause of action can arise in favor of the shipper until the rate complained of has been modified, by the Railroad Commission upon proper application to it, or by it after judgment of a court of competent jurisdiction in a direct proceeding within the provisions of the statute, determining the rates as fixed by the board to be excessive or unreasonable. The shipper's remedy is to promptly have the rate modified, if unreasonable, by the commission, or to have the reasonableness thereof determined by a court in an action to review the reasonableness of the rates as fixed and established. (*Graham Ice Co.* v. *Chicago, M. & St. P. Ry. Co., supra; Northern Pacific Ry. Co.* v. *Solum,* 247 U. S. 477, 62 L. Ed. 1221, 38 Sup. Ct. Rep. 550.) Plaintiff's remedy was to apply to the Railroad Commission for a modification of the rate established or for the fixing of a rate in the event no rate had been established, and upon its refusal to grant relief as against an alleged excessive or discriminatory rate, he is entitled to have the matter determined by a court of competent jurisdiction.

The statute differs from the federal Act in that under the latter Act the Interstate Commerce Commission is expressly authorized to order the railroad to pay to the complainant the sum it may find he has been damaged by reason of an unjust rate or discrimination in violation of the Act (36 Stats. 554; U. S. Comp. Stats., sec. 8584), while under the state Act reparation may only be had in a court proceeding based upon the findings and records of the Board of Railroad Commissioners (sec. 4389, Revised Codes).

Under the Interstate Commerce Act, when a person seeks to recover back money which it is claimed he was required to pay in excess of some established interstate rate, or where he seeks to recover damages for discrimination practiced against him, or whenever he attacks the reasonableness of a rate, he is required to present his claim to the Interstate Com-

merce Commission for examination and adjustment before he can bring an action in the courts, notwithstanding the provisions of section 22 of the Act (U. S. Comp. Stats., sec. 8595) that nothing herein "contained shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this Act are in addition to such remedies." (*Robinson* v. *Baltimore-Ohio R. Co.*, 222 U. S. 506, 56 L. Ed. 288, 32 Sup. Ct. Rep. 114; *Mitchell Coal & Coke Co.* v. *Pennsylvania Ry. Co.*, 230 U. S. 247, 57 L. Ed. 1472, 33 Sup. Ct. Rep. 916; *Howard Supply Co.* v. *Chesapeake & Ohio Ry. Co.* (C. C.), 162 Fed. 188; *Franklin* v. *Philadelphia etc. Ry. Co.* (D. C.), 203 Fed. 134; *United States* v. *Merchants' & M. Traffic Assn.*, 242 U. S. 178, 61 L. Ed. 233, 37 Sup. Ct. Rep. 24.)

The reasoning in the above cases applies with equal force to our statute and to the lack of jurisdiction of the courts to pass upon the reasonableness of the rates and discriminations before the commission has taken action thereon. In other words, before any shipper can recover in the courts damages for excess rates or discriminations, the discrimination or unreasonableness of the rate must first be passed upon by the special tribunal expressly created and authorized by law to handle such matters—the Railroad Commission.

The fact that the Railroad Commission is not authorized, upon determining that a rate is unreasonable or discriminatory, to order reparation, does not prevent a shipper, after the rate has been so determined by the special tribunal created for that express purpose, from maintaining an action in court to recover damages sustained by him as a result of such unreasonable or discriminatory rate. His action is based upon the fact that such rate has been so declared by the proper tribunal, and the court merely determines the amount of damages, if any, sustained.

The cases of *Santa Fe etc. Co.* v. *Atchison etc. Ry. Co.*, 21 N. M. 496, 155 Pac. 1093, and *Murphy* v. *New York Cent. Ry.*, 170 App. Div. 788, 156 N. Y. Supp. 49, cited by plaintiff,

[6] are not in conflict with this theory. A voluntary reduction of a rate by a carrier would not make the prior rate unlawful, unreasonable or discriminatory and the basis for an action for damages.

The supreme court of Wisconsin in an exhaustive opinion has held that a shipper must *first present* his claim to the Railway Commission for determination of the reasonableness of the rate by that board before he can maintain an action in court. (*Graham Ice Co.* v. *Chicago, M. & St. Ry. Co.,* *supra*; see, also, *Hewitt Logging Co.* v. *Northern Pacific Ry. Co., supra; Manufacturers' Ry. Co.* v. *United States,* 246 U. S. 457, 62 L. Ed. 831, 38 Sup. Ct. Rep. 383; *State ex rel. City of Billings* v. *Billings Gas Co.,* 55 Mont. 102, 173 Pac. 799; *Beadle* v. *Kansas City etc. R. Co.,* 51 Kan. 248, 32 Pac. 910; *Winsor Coal Co.* v. *Chicago & A. R. Co.* (C. C.), 52 Fed. 716; *Chicago, R. I. & P. Ry. Co.* v. *Gist,* 79 Okl. 8, 190 Pac. 878.) Were this not the correct procedure under the statute, great and inevitable confusion and uncertainty would result, as there might arise a multiplicity of suits with varied determinations in the several jurisdictions in the state. In the case of *State ex rel. City of Billings* v. *Billings Gas Co., supra,* this court, speaking through Mr. Justice Holloway, said: "A consideration of the statute [Chap. 52, Laws 1913] leads to the conclusion that in its enactment the legislature intended to provide a comprehensive and uniform system of regulation and control of public utilities, by a specially created tribunal, through which the state itself exercises its sovereign power. Our conclusion is that since 1913 the Public Service Commission has had exclusive jurisdiction over the subject of rate regulation of this company [speaking of the tariffs established by the Board of Railroad Commissioners, *ex-officio* Public Service Commission], that the provisions of the [city] franchise contract fixing rates were superseded by the rates approved by the commission, and that the remedy of the city is by complaint to the commission if the rates now in effect are excessive." This language is applicable to the parent

statute, which establishes a comprehensive system. for the government of common carriers within the state.

Therefore: (1) If the rate charged from Evaro and Schley [7] was the rate fixed and established by the Railroad Commission, and if the plaintiff seeks to have the rate so established declared unjust and unreasonable or discriminatory. he should have proceeded under the provisions of section 4391; or (2) if no rate whatever had been established by the board, or the rate fixed was considered excessive then he should have made application to the board, under section 4377, for investigation and determination as to its justness and reasonableness, before he would be in a position to maintain action in the courts; or (3) if the plaintiff's case is predicated upon freight charges made in excess of those fixed and established by the Board of Railroad Commissioners, then the complaint should make such allegation and the action must be shown to have been brought within twelve months from the date of payment, under section 4389. In our opinion, the Railroad Commission Law is controlling, and its provisions cannot be disregarded.

The complaint does not state a cause of action, and the judgment is affirmed.

*Affirmed.*

Mr. Chief Justice Brantly and Associate Justices Reynolds, Cooper and Holloway concur.

Rehearing denied June 20, 1921.