536 A.2d 1197

**Chu S. RHEE**

v.

**COMBINED ENTERPRISES, INC., et al.**

**No. 841, Sept. Term, 1987.**

Court of Special Appeals of Maryland.

Feb. 10, 1988.

Certiorari Granted June 24, 1988.

Christopher K. Mangold (Joseph H. Koonz, Jr. and Koonz, McKenney & Johnson, on the brief) Landover, for appellants.

Patrick J. Attridge (Bromley, Brown & Walsh, on the brief) Rockville, for appellee.

Argued before WEANT, ROSALYN B. BELL and KARWACKI, JJ.

ROSALYN B. BELL, Judge.

The issue before us is a relatively narrow one: Whether the announced policy of the forum court precludes a suit by a spouse in a tort action, brought in the domicile state, when suit would have been permitted in the state in which the tort occurred. The Circuit Court for Montgomery County concluded that the law of the forum should apply. We conclude otherwise based on the circumstances of this case. We will explain.

The facts are relatively brief and the parties [1] through counsel, much to their credit, agreed in accordance with Maryland Rule 1026 e to a statement of the case and of the facts. We quote:

*"Statement of the Case*

"Appellant Chu S. Rhee (hereinafter 'Mr. Rhee') filed a complaint in the Circuit Court for Montgomery County on May 13, 1986, against the appellee, Chaiha K. Rhee (here-

---

**1.** Combined Enterprises, Inc., an appellee, did not file a brief in this Court.

inafter 'Mrs. Rhee') and against Combined Enterprises, Inc., d/b/a/ Budget Rent–A–Car of Rockville (hereinafter 'Budget'). Mr. Rhee alleges that on May 15, 1983, he was injured in a single-car accident on the New Jersey Turnpike, near route 18 in New Brunswick, New Jersey, while occupying a vehicle leased from Budget and operated by Mrs. Rhee. Mr. Rhee seeks damages for his injuries from Budget under theories of negligence, breach of express and implied warranties, and strict liability, alleging that Budget supplied a vehicle that was in a dangerous, unsafe, and defective condition. Mr. Rhee also seeks damages from Mrs. Rhee, alleging that she was negligent in the operation of the vehicle. Both defendants filed Answers denying liability. In addition, Mrs. Rhee asserted in her Answer that the action against her was barred by the interspousal immunity rule.

"On April 30, 1987, Mrs. Rhee filed a Motion for Summary Judgment and attached thereto an Affidavit stating that on the date of the accident, and at all times to the present, she and Mr. Rhee were married to one another. In her Motion, Mrs. Rhee asserted that Mr. Rhee's action against her was barred by the common law of Maryland, which precludes a suit at law by one spouse against the other.[2] [ ([2]Mrs. Rhee pointed out that the decision of the Court of Appeals in *Boblitz v. Boblitz*, 296 Md. 242, 462 A.2d 506 (Md.1983), abrogated the interspousal immunity rule as to actions sounding in negligence and accruing after June 30, 1983. As the instant action accrued on May 15, 1983, Mrs. Rhee asserted that the *Boblitz* abrogation does not apply.) ] Mr. Rhee opposed the Motion, asserting that the substantive law of the state of New Jersey applies to this case and permits suit by one spouse against the other because New Jersey abrogated interspousal tort immunity in 1970.[3] [ ([3]*See Immer v. Risko*, 56 N.J. 482, 267 A.2d 481 (N.J.1970); *Merenoff v. Merenoff*, 76 N.J. 535, 388 A.2d 951 (N.J. 1978).) ] Neither party requested a hearing.

"By Order dated May 21, 1987, the Circuit Court (Cave, J.,) granted Mrs. Rhee's Motion and entered summary judgment in her favor. Judge Cave, pursuant to Maryland Rule 2–602(b), determined that there was no just reason for delay and entered a final judgment in favor of Mrs. Rhee.

"On June 17, 1987, Mr. Rhee noted a timely appeal from Judge Cave's May 21, 1987, Order. Mr. Rhee's action against Budget remains pending in the Circuit Court.

### "Statement of Facts

"Mr. and Mrs. Rhee, at all times pertinent, have been domiciled in the state of Maryland and reside at 12730 Glen Mill Road, Potomac, Maryland. On May 15, 1983, and at all times relevant here, Mr. and Mrs. Rhee have been, and are, husband and wife.

"On May 15, 1983, Mrs. Rhee was operating a 1982 Lincoln automobile, leased from Budget's facility in Rockville, Maryland. Also present in the vehicle were Mrs. Rhee's husband, sister, mother, and brother-in-law. The family was returning to the Rhee residence in Potomac, Maryland, from New York City, where they had spent the weekend visiting friends. At approximately 4:50 p.m., while on the New Jersey Turnpike, near Route 18 in New Brunswick, New Jersey, the vehicle struck a guard rail, rolled down an embankment, and caused personal injury to each of the passengers, including Mr. Rhee." (Footnotes in original).

### Linton v. Linton

In *Linton v. Linton,* 46 Md.App. 660, 420 A.2d 1249 (1980), we answered the precise questions asked here. Chief Judge Gilbert said for this Court:

"The law of the forum [Maryland] will not be applied to defeat the appellant's right to sue her husband for negli-

gence when, as here, the *lex loci delicti* permits that type of civil action."

*Linton,* 46 Md.App. at 667, 420 A.2d 1249.

In *Linton,* the wife brought a negligence action against her husband for injuries she sustained when their car crashed through an intersection in Alexandria, Virginia. Mrs. Linton's complaint alleged that her husband was negligent in the operation of the vehicle. At the time of the accident, Maryland barred interspousal suits sounding in negligence while the State of Virginia permitted such suits. *Linton,* 46 Md.App. at 662–63, 420 A.2d 1249.

The trial judge granted a preliminary objection based on the doctrine of interspousal tort immunity. On appeal, we reversed, remanded the case for further proceedings and directed the lower court to apply the *lex loci delicti.*

Appellee does not dispute that Maryland continues to adhere to the rule that, when an accident occurs in another state, "the substantive tort law of the state where the wrong occurs governs." She contends, however, that adherence to the doctrine of *lex loci delicti,* does not mandate application of the entire law of the foreign state. She argues that only questions concerning substantive tort law are to be governed by the law of the foreign state. *Hauch v. Connor,* 295 Md. 120, 125, 453 A.2d 1207 (1983). Appellee states that the right of a resident of this State to maintain an action against his or her spouse is not a matter of substantive tort law but a threshold question.

### Hauch v. Connor

On the strength of *Hauch,* appellee would have us overrule *Linton.* She points out, quite correctly, that we did not have the benefit of the Court of Appeals' decision in *Hauch* when we decided *Linton.*

Appellee reads *Hauch* to support her position that interspousal immunity is a threshold question which must be determined by the law of the forum. While appellee's

position is not totally without foundation, we do not agree with her conclusion. We will explain.

*Hauch* involved three Maryland residents who were employed by Hertz Corporation in Maryland. In the course of their employment, the three employees drove together to Delaware. Their car collided with another car. The two passengers filed for and received benefits under the Maryland Workmen's Compensation Act for their injuries. Then they filed suit against the co-employee, the driver. The Circuit Court for Anne Arundel County followed the *lex loci delicti* and applied Delaware's workers' compensation statute to bar the suit. The appellants in *Hauch* sought to have the court apply an approach to the conflict of laws issue that varies from the *lex loci delicti,* one which is based on the law of the state which has the most significant relationship with the occurrence and with the parties. While the Court of Appeals reversed, it relied primarily on public policy considerations associated with workers' compensation law.

## The Most Significant Relationship

For many years, the choice of governing law in tort cases depended solely upon the place of the wrong, which was deemed to be the place where the first harmful impact was inflicted. This has been referred to as the *lex loci delicti* doctrine. This was the law with a few exceptions espoused in the original Restatement of Conflict of Laws §§ 377, 378 (1934). In more recent years, a number of states have reconsidered the doctrine. Some states have characterized the doctrine as mechanical and are applying the Second Restatement approach—application of the law of the state which has the most significant relationship with the occurrence and with the parties. Restatement (Second) Conflict of Laws § 145 (1971). The Second Restatement of Conflict of Laws states the rationale for the changed rule as follows:

> "The vested rights approach of the original Restatement has been rejected in the present Chapter. Instead, the rights and liabilities of the parties in tort are said to

be governed by the local law of the state which, with respect to the particular issue, has the most significant relationship to the occurrence and the parties. Separate rules are stated for different torts and for different issues in tort. In other words, the identity of the state of most significant relationship is said to depend upon the nature of the tort and upon the particular issue."

Restatement (Second) Conflicts of Law ch. 7 introductory note (1971). Under the original Restatement approach—*lex loci delicti*—we would ordinarily apply the law of New Jersey in a tort case. In contrast, under the Second Restatement approach, we would often apply the law of Maryland.

In *White v. King*, 244 Md. 348, 352–55, 223 A.2d 763 (1966), the Court reviewed the criticism of *lex loci delicti* and arguments advanced to support adoption of the most significant relationship approach as set forth in the Second Restatement. The Court concluded that, "in the present state of the law, we [should] leave any change in the established doctrine to the Legislature." *White*, 244 Md. at 355, 223 A.2d 763. This position was reaffirmed in *Frericks v. General Motors Corp.*, 274 Md. 288, 296, 336 A.2d 118 (1975).

More recently, in *Hauch*, the Court specifically announced its continued "adherence to the rule of *lex loci delicti* for determining the applicable tort law," *Hauch*, 295 Md. at 125, 453 A.2d 1207, however, the Court proceeded to carve out an exception to the rule. The Court commented that "many courts recognize that workers' compensation law conflict issues present distinct policy questions and should not be treated as tort or contract matters for choice of law purposes." *Hauch*, 295 Md. at 127, 453 A.2d 1207. Further, the Court enunciated the rationale which supports this exception in a workers' compensation case:

"Suits by employees against their immediate employers for injuries arising out of and in the course of employment are now barred by virtually all workmen's compensation statutes in this country. Nevertheless, 'because of

varying rules as to the availability of the exclusive-reme-
dy defense to the statutory employer,' choice of law
issues arise with respect to suits against statutory em-
ployers. In these suits, it is generally held that the
forum state will enforce a bar created by the exclusive
remedy statute of any state in which the employer may
be liable for workmen's compensation benefits. Although
the outcome in some of these cases is the same as it
would be if the rule of *lex loci delicti* were applied, the
underlying rationale in holding the employer immune is
different. The rationale is that the employer has under-
taken the burden of supplying workmen's compensation
insurance in return for immunity from suit. Moreover, in
several cases this rationale has been used to bar an action
which would not be barred under the rule of *lex loci
delicti*. The rationale for precluding employee-employer
suits, however, does not apply in actions by employees
against fellow employees.

"Consequently, where actions by injured employees
have been brought against co-employees in one state for
wrongs committed in another state, courts, even in tradi-
tional *lex loci delicti* jurisdictions, have applied the work-
men's compensation law of the forum state."

*Hauch*, 295 Md. at 127–28, 453 A.2d 1207 (citations omitted)
(footnote omitted).

█ Despite the unequivocal assertion by the Court that
it would continue to adhere to the *lex loci delicti* approach,
*Hauch*, 295 Md. at 123–25, 453 A.2d 1207, appellee divines a
move from that position which would require us to apply
the law of the forum in cases such as the instant case
where the parties would be barred from recovery under the
law of the forum despite the fact that a different law
applies under *lex loci delicti*. *Hauch* is not a different
approach to the resolution of conflicting laws, but, on the
contrary, affirms an exception that has long been recog-
nized under *lex loci delicti*. This exception, while only
tangentially raised in earlier Maryland cases, has been
followed in other jurisdictions. This exception briefly stat-

ed is that the public policy of the forum domicile state can bar an action which would be permitted by the *lex loci delicti*. *Hauch*, 295 Md. at 120, 453 A.2d 1207.

The analysis the Court in *Hauch* followed was limited very closely to workers' compensation cases. The Court concluded that "[w]ith regard to the threshold matter of whether the court is open to a particular litigant, obviously the policy of the forum state is extremely important." *Hauch*, 295 Md. at 133, 453 A.2d 1207. We agree that to adopt this exception as it relates to workers' compensation cases indicates the acceptance of a principal which will potentially bar other tort actions. This is particularly true since *Hauch* was not a traditional workers' compensation case involving an employer-employee claim, but instead involved employee-employee secondary claims. *Hauch* does not, however, require or support barring suits in Maryland between spouses.

The application of policy considerations to interspousal immunity cases has received some attention in other states. In cases where interfamilial immunity is the law of the forum state, but has been abrogated in the state where the tort occurred, the forum state has often precluded the suit. Restatement (Second) Conflict of Laws § 169 reporter's note. That bar, however, has not always been applied. Restatement (Second) Conflicts of Laws § 169 reporter's note. The rationale for barring the application of the *lex loci delicti* has not always been easily discernible. A number of the cases have focused on the same issue as did the Court in *Hauch* and have considered the public policy of the forum state with respect to the issue involved. The rationale is usually based upon a public policy analysis which questions whether the application of the *lex loci delicti* is so abhorrent and harmful to the citizens of the forum domicile state that the principle of comity need not be recognized.

Considering that a majority of the states have now adopted the most significant relationship approach to the conflicts issue in tort cases, it is not surprising that there

are very few cases which have relied on the public policy analysis. A few of the cases based in that rationale directly or indirectly include: *Flogel v. Flogel*, 133 N.W.2d 907 (Iowa 1965); *Koplik v. C.P. Trucking Corp.*, 27 N.J. 1, 141 A.2d 34, 40 (1958) (applied the law of the domicile because application of the *lex loci delicti* would "interfere seriously with a status and a policy which the state of residence is primarily interested in maintaining"); *Kircher v. Kircher*, 288 Mich. 669, 286 N.W. 120 (1939); *Thompson v. Thompson*, 105 N.H. 86, 193 A.2d 439 (1963). One thing that is apparent in these and most cases not adhering to the most significant relationship approach is that the public policy of the domicile forum state becomes the issue.

■ In the instant case, if we were to assume the strict rule of *lex loci delicti*, the suit will go forward. If we read *Hauch* to say—as we do—that the issue of suit is a threshold question to be decided based on public policy rather than a strict adherence to the *lex loci delicti*, the suit still will go forward. In fact, in *Linton* we relied on the comments made earlier by the Court of Appeals in *Texaco, Inc. v. Vanden Bosche*, 242 Md. 334, 219 A.2d 80 (1966), where that Court pointed out "that a 'heavy burden' is shouldered by one who seeks to block a cause of action in Maryland courts on the premise that the case is contrary to this State's public policy." *Linton*, 46 Md.App. at 665, 420 A.2d 1249. In *Linton*, we focused on *Harford Mutual Insurance Co. v. Bruchey*, 248 Md. 669, 238 A.2d 115 (1968), a case involving a personal injury arising from a motor vehicle accident that occurred in Virginia. Virginia did not allow recovery for loss of consortuim but the husband brought suit in the Maryland which allowed him to recover for the loss. In invoking the law of Virginia to prevent the recovery, Chief Judge Hammond quoted from *Texaco*, 242 Md. at 340, 219 A.2d 80:

> " 'Recent legal thinking is that a public policy which will permit a state to refuse to enforce rights created by the law of a sister state must be very strong indeed.' "

*Bruchey,* 248 Md. at 674, 238 A.2d 115. Chief Judge Hammond further commented, "Certainly the public policy of Maryland as to recovery for consortium is no stronger than its public policy forbidding a wife to sue her husband." *Bruchey,* 248 Md. at 676, 238 A.2d 115.

In *Linton* we read *Harford*

"as approving the determination ... that Maryland public policy is not so strong as to prohibit a spouse from recovering against the other spouse in the courts of this State if the action is permitted by the *lex loci delicti.* Our public welfare, health, and morals will not be endangered by allowing such suits to proceed to judgment.[9] There is little likelihood of an onslaught of similar litigation in our courts."

*Linton,* 46 Md.App. at 667, 420 A.2d 1249. In footnote nine, Chief Judge Gilbert wrote:

"In the instant case, it can hardly be argued that the suit will cause a strain on the marital relationship when, in fact, the death of the husband has severed the bonds of matrimony."[2]

*Linton,* 46 Md.App. at 667 n. 9, 420 A.2d 1249. The rationale in the body of the opinion provides no support for any other proposition than that interspousal tort suits sounding in negligence can proceed with the same expectation of marital harmony as the tranquility (or lack of it) expected if the court refused to permit such a suit to proceed to judgment. The premise of *Linton* is founded on the effects of permitting such suits while *both* spouses are alive and remain married. We hold that footnote nine will not be read to limit the holding of the case as we went on to say:

"What we perceive in this case is 'merely a difference of law between the place of the wrong [Virginia] and the forum [Maryland] and not an overriding public policy of the forum.' [*Bruchey,* 248 Md.] at 676 [238 A.2d 115].

---

**2.** Mr. Linton had died after the filing of the suit.

"The law of the forum will not be applied to defeat the appellant's right to sue her husband for negligence when, as here, the *lex loci delicti* permits that type of civil action."

*Linton,* 46 Md.App. at 667, 420 A.2d 1249 (some brackets in original).

In *Linton,* Chief Judge Gilbert discussed the concept of public policy and the origin of the interspousal immunity doctrine. We see nothing we can or should add to this discussion beyond noting that the Court of Appeals came to similar conclusions in totally abrogating the doctrine of interspousal immunity in *Boblitz v. Boblitz,* 296 Md. 242, 462 A.2d 506 (1983).

We reaffirm our holding in *Linton* that to circumvent the announced public policy of Maryland barring interfamilial tort suits is not so " 'hurtful or detrimental to the interest and welfare of ... [Maryland's] citizens' " as to violate the principle of comity which would permit the law of New Jersey to be applied in Maryland courts in a tort case. *Linton,* 46 Md.App. at 661–62, 420 A.2d 1249, quoting *Lowndes v. Cooch,* 87 Md. 478, 487, 39 A. 1045 (1898). The question is not whether we apply the law of Maryland, the forum domicile. The question is whether the public policy of Maryland as the forum domicile is offended by the *lex loci delicti.* We held in *Linton* and reaffirm today that it does not.

### Prospective Overruling

Implicit in appellee's position is the claim that the court could not apply *Boblitz* because appellant's cause of action accrued before that decision.[3] Appellee has misread *Boblitz.* When the Legislature enacts a law, it becomes effective for the future simply by pronouncement. When the court considers changing its position and overruling a prior decision, the desire not to unsettle the law can result in the

---

**3.** The opinion was filed on June 30, 1983 and the cause of action in the case *sub judice* had accrued on May 15, 1983.

perpetuation of existing law. Shaefer, The Control of "Sunbursts": Techniques of Prospective Overruling, in *Appellate Judicial Opinions* (Leflar ed. 1974). This dilemma is answered by prospective overruling.

Mr. Justice Cardozo explicated this technique in *Great Northern Railway Co. v. Sunburst Oil & Refining Co.*, 287 U.S. 358, 53 S.Ct. 145, 77 L.Ed. 360 (1932). In that case, Sunburst had sought to recover payments claimed to be overcharges for freight after the rates were found to be excessive and unreasonable. An earlier case, *Doney v. Northern Pacific Railway Co.*, 60 Mont. 209, 199 P. 432 (1921),[4] had outlined the procedures necessary to recover overcharges. Sunburst had acted in conformity with the *Doney* procedures. *Sunburst*, 287 U.S. at 360, 53 S.Ct. at 147. The Supreme Court of Montana held that the ruling in the *Doney* case was erroneous and would not be followed in the future. But, the Court went on to say that the law in the *Doney* case was law until reversed and "would constitute the governing principle for shippers and carriers who, during the period of its reign, had acted on the faith of it." *Sunburst*, 287 U.S. at 361, 53 S.Ct. at 147.

The issue before the Supreme Court was whether the annulment retroactively of rates, valid when exacted, violated the Fourteenth Amendment. In holding that the Federal Constitution was not violated, Justice Cardozo opined:

> "A state in defining the limits of adherence to precedent may make a choice for itself between the principle of forward operation and that of relation backward. It may say that decisions of its highest court, though later overruled, are law none the less for intermediate transactions. Indeed, there are cases intimating, too broadly, that it *must* give them that effect; but never has doubt been expressed that it *may* so treat them if it pleases, whenever injustice or hardship will thereby be averted."

---

**4.** *Doney* was overruled in part by *Montana Horse Products Co. v. Great Northern Railway Co.*, 91 Mont. 194, 7 P.2d 919, 923 (1932). The grounds for overruling *Doney* do not implicate the case *sub judice*.

*Sunburst,* 287 U.S. at 364, 53 S.Ct. at 148. (citations omitted) (emphasis in original).

The type of overruling as used by the Supreme Court of Montana in *Sunburst* has been criticized as dicta. It is now called "purely prospective" and is distinguished from two other types of prospective overruling. Purely prospective overruling has also been criticized because it discourages litigants from seeking a change in the law because they receive no benefit themselves. This objection has been overcome by the first variation which provides that the litigants themselves are covered by the change in law. The other variation makes the overruling fully retroactive.

The approach of the courts of Maryland has been on a case by case basis. In *Boblitz,* the Court of Appeals abrogated the doctrine of interspousal immunity in this State as to cases sounding in negligence. The Court did not apply the abrogation purely prospectively. Instead, it "applied the abrogation to the *Boblitz* case" and prospectively to all such causes of action accruing after the date of the filing of the opinion. *Boblitz,* 296 Md. at 275, 462 A.2d 506. The Court did not give us a reason why they put this time bar on cases which had arisen before. In any event, that time bar does not conflict with our decision here.

The opinion in *Boblitz* only purported to apply the change to law "in this State." *Boblitz* did not effect *Linton* which required the application of the law of the *lex loci delicti* to torts arising outside of Maryland. Thus, the law as applied to the instant case is that of New Jersey unless it is at odds with the public policy of Maryland. *Linton,* 46 Md.App. at 667, 420 A.2d 1249. The Court in *Boblitz* may have been attempting to retain as settled those claims that had already accrued. Our decision is not at odds with that intention because, at the time of the accident, the parties were subject to New Jersey law under *lex loci delicti. Linton,* 46 Md.App. at 667, 420 A.2d 1249.

One final possibility is that the Court wanted to protect Maryland insurance companies who had not contracted to

cover interspousal tort claims, at least on renewals after *Boblitz.* Our decision here today does not conflict with that goal. At the time of the accident in question, we had already held in *Linton* that we would apply the law of the state in which the accident occurred. Hence, the risk of the occurrence which is before us was already known.

JUDGMENT REVERSED. CASE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY APPELLEE.