**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

MOTOR CLUB OF AMERICA INSURANCE
COMPANY,
<u>Plaintiff-Appellant,</u>

and

LORRAINE WEIL; CAROL WILKE;
LAWRENCE WILKE; MICHAEL WILKE,
<u>Plaintiffs,</u>

                                   No. 96-1603

v.

EBRAHIM HANIFI; GULAGHA SULTAN,
<u>Defendants-Appellees,</u>

and

ALLSTATE INSURANCE COMPANY,
<u>Defendant.</u>

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Andre M. Davis, District Judge.
(CA-94-2021-AMD)

Argued: April 9, 1997

Decided: May 21, 1998

Before WILKINSON, Chief Judge, WIDENER, Circuit Judge, and
DUFFY, United States District Judge for the District of
South Carolina, sitting by designation.

_____

Vacated and remanded by published opinion. Judge Widener wrote
the opinion, in which Chief Judge Wilkinson and Judge Duffy joined.

**COUNSEL**

**ARGUED:** Joanna Jesperson, EPSTEIN, BECKER & GREEN, P.C., Washington, D.C., for Appellant. Richard Thomas Radcliffe, Jr., CHURCH & HOUFF, P.A., Baltimore, Maryland, for Appellees. **ON BRIEF:** David E. Manoogian, Peyton S. Isaac, EPSTEIN, BECKER & GREEN, P.C., Washington, D.C., for Appellant.

_____

**OPINION**

WIDENER, Circuit Judge:

In this case, Motor Club of America Insurance Company appeals the April 3, 1996 order of the United States District Court for the District of Maryland granting summary judgment in favor of two New York defendants, Ebrahim Hanifi and Gulagha Sultan. The district court ruled that Maryland's law governed the issue of liability for the automobile accident so the plaintiffs had to establish the identity of the driver and show his negligence. The court therefore rejected the application of New York Traffic and Vehicle Law§ 388 which imposes vicarious liability on the owners of vehicles registered in New York for the negligence of any permissive users, even when the car is outside of New York. The court decided that the plaintiffs could not establish a genuine issue of fact as to the identity of the driver of the vehicle which caused the accident and thus summary judgment was appropriate as to both defendants.

We reverse the grant of summary judgment because we find the plaintiffs did establish a genuine dispute of fact as to the identity of both the driver and the car. Additionally, we find summary judgment as to Hanifi was also improper where the district court erred in not applying New York Section 388.

I.

The plaintiffs, Lorraine Weil, and the Wilkes--Lawrence, Michael and Carol--resided in New Jersey at the time of the accident. The defendants, Ebrahim Hanifi and his brother-in-law Gulagha Sultan are

2

residents of New York. At all times relevant to this action Mrs. Weil had an uninsured motorist policy with plaintiff-intervenor Motor Club which provided her with insurance coverage in the event that she became injured, or otherwise incurred damages from the actions of an uninsured motorist. The Wilkes were not insured by Motor Club.

On May 11, 1991 at about seven a.m. the plaintiffs were traveling south in the passing lane on Interstate 95 in a vehicle owned and driven by Robert Weil, Mrs. Weil's husband. According to the plaintiffs and witnesses the accident resulted when a white car from the northbound lanes crossed over the median strip into the southbound lanes just in front of the plaintiffs' car. The police report indicates that the white car performed a U-turn into the southbound lanes, and while it did not strike the plaintiffs' car, in swerving to evade the white car, the plaintiffs' car struck another and overturned. The white car left the scene heading south.

The occupants of two other southbound cars witnessed the accident and reported what they saw to police. John McGovern was driving south on Interstate 95 with his wife Elda McGovern in the passenger seat when they saw the accident and proceeded to follow the white car as it drove off. They both saw the license plate and Mrs. McGovern recorded it. Shortly thereafter they stopped at a fire station to call the police. Officer James Gruver later included that information in a supplement to the accident report. The accident was also witnessed by Colleen Young. She too followed the white car, and was observed by the McGoverns as they both trailed the white car. Miss Young also remembered the number and relayed the information to the police.

Officer Gruver recorded the license plate number as New York tag number VZY-653, the same license number reported by both the McGoverns and Miss Young. Officer Gruver investigated the tag number and determined that Ebrahim Hanifi owned a white car with that license plate. The police report reflects that the McGoverns identified the occupants of the cars as three black males, while Young said they were three white males.

Hanifi admits that in May 1991 he owned a white car with New York plates VZY-653. However, he states that in April 1991 he had loaned the car to his brother-in-law, Sultan. Sultan's statement cor-

3

roborates this, and he states that he had exclusive possession of the vehicle, and that only he knew where he kept the spare set of keys. Sultan further verifies that the car was in his possession in New York on the day of the accident, May 11, 1991. Four family members signed affidavits to the effect that the car was in Sultan's driveway the morning of the accident. Sultan also stated that while his car was not involved in the accident at issue, it was involved in a "slight fender-bender" earlier in April 1991.

II.

Motor Club notes that this action had an involved procedural history prior to the filing of this suit in the Maryland district court.[1] We detail here only the procedure of the instant suit, which is all that is relevant to the issue at hand.

On May 10, 1994 the individual New Jersey plaintiffs filed their negligence action against the New York defendants, Hanifi and Sultan, in the Circuit Court for Harford County, Maryland, alleging that the defendants caused the Maryland wreck. The defendants removed the action to the United States District Court for the District of Maryland on the basis of diversity jurisdiction. Thereafter, the defendants filed a third-party complaint against Motor Club alleging that because the defendants were not involved in the accident, Motor Club was liable to Mrs. Weil as her uninsured motorist carrier.

_____

[1] Motor Club represents that the individual plaintiffs sued Motor Club in New Jersey on March 4, 1994. Motor Club then filed a third-party complaint against Allstate Insurance Company, Hanifi's liability carrier. Motor Club and Allstate entered intercompany arbitration, and the latter was adjudged liable. The plaintiffs here have filed suit in a state court in Maryland, where the accident occurred. That case was removed to the district court.

The litigation in New Jersey was stayed pending the outcome of the Maryland action, and all the parties to the New Jersey action, the individual plaintiffs and the two insurance companies, have entered into a stipulation whereby all issues of liability will be decided by the Maryland action.

On January 17, 1995 defendants Hanifi and Sultan filed their first motion for summary judgment against the plaintiffs, asserting that there was insufficient evidence to prove the identity of the driver of the white vehicle which caused the accident. In their respective answers to interrogatories, Hanifi admitted ownership of a white four-door Oldsmobile with the New York registration "VZY-653," and Sultan admitted that he possessed the white car on the day of the accident, and that it was parked at his house. Motor Club opposed the motion for summary judgment on the grounds that it was premature, that the prior intercompany arbitration had found that Hanifi's car had caused the accident, and that there was sufficient evidence from which to find the defendants liable for the accident. On March 2, 1995 the court found that Motor Club had fulfilled its burden of coming forward with evidence to create a genuine dispute of fact and denied the defendants' motion for summary judgment. The defendants moved in April for reconsideration of their motion for summary judgment, which the court denied on May 1, 1991.

On April 10, 1995 the defendants had moved to dismiss the third-party complaint against Motor Club. Motor Club opposed the defendants' motion and simultaneously filed its own motion to intervene in the lawsuit. The court denied the motion to dismiss and granted Motor Club's motion to intervene. On May 24, 1995 Motor Club filed its complaint in intervention suing both the individual plaintiffs and the defendants for declaratory relief and indemnification. Motor Club alleged that because the accident was caused by a known vehicle, the one owned, insured, and registered to Hanifi and in the admitted exclusive possession of Sultan, Motor Club as the uninsured motorist carrier for Mrs. Weil was not responsible for her damages.

In their third attempt to secure summary judgment, on November 15, 1995, Hanifi and Sultan renewed their motion for summary judgment. In opposition to the motion, Motor Club argued that New York Vehicle and Traffic Law § 388 applied, such that Hanifi, as the vehicle owner, should be held vicariously liable for any permissive driver, and that Sultan would be liable for his negligent operation. On January 4, 1996 a different judge than the one who had denied the previous motions reversed the March 2, 1995 order denying summary judgment, and granted the motion for summary judgment as to Sultan. The court found there was insufficient evidence as to the identity of

5

the driver of the vehicle to create a genuine issue of fact. That same order denied the motion for summary judgment as to Hanifi because Section 388 "seem[ed] clearly to apply" and therefore created an issue of fact as to Hanifi's liability as the owner of the car. Thus, as the case went to trial, Motor Club remained as an intervened plaintiff against the individual plaintiffs and against defendant Hanifi.

On April 2, 1996 the matter came on for a jury trial before the same judge who had issued the January 4 order dismissing Sultan and finding that because of the application of Section 388, Hanifi could not obtain summary judgment in his favor. Motor Club represents that present at trial were plaintiff Lorraine Weil, defendant Hanifi and former defendant Sultan, as well as Motor Club by its counsel. Also present under subpoena by Motor Club was eyewitness Colleen Young and a passenger in her car, Heather Young. Further, video depositions of John and Elda McGovern had been recorded by Motor Club for use at trial, and Motor Club states that the police officer who wrote the police report, Officer Gruver, had been subpoenaed and was in attendance.

On the day of trial, prior to the impaneling of the jury, counsel for Hanifi submitted without prior notice to Motor Club a pre-trial memorandum arguing that Section 388 and its vicarious liability did not apply and that Maryland law should govern. Over Motor Club's objections the court heard oral argument and the court reversed the portion of its January 4, 1996 order with respect to Section 388 and held on the next day that Section 388 did not apply. The court ruled that under the rule of lex loci delicti Maryland's substantive law prevented the application of the New York statute in deciding the issue of liability for the Maryland accident. Although Motor Club requested extra time to brief the issue and pointed out that it had in its preparations for trial relied on the prior ruling of the court that New York law applied, the district court denied Motor Club's request for additional time and a continuance of the trial date.

The court entered its final order on the next day, April 3, 1996 granting judgment in favor of Hanifi, and entering judgment in favor of Hanifi and all defendants against the plaintiffs and Motor Club pursuant to Federal Rule of Civil Procedure 50. This judgment incorporated by reference all prior rulings into its final order. Motor Club

6

appealed. The judgment recited it was entered pursuant to Rule 50, but nothing was offered at the trial, so we consider the matter as a motion for summary judgment under Rule 56 or a motion to dismiss under Rule 12. Accordingly, we have jurisdiction pursuant to 28 U.S.C. § 1291.

III.

Federal Rule of Civil Procedure 56 provides that a party is entitled to summary judgment only if "there is no genuine issue of fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Cray Communications, Inc. v. Novatel Computer Systems, Inc., 33 F.3d 390, 393 (4th Cir. 1994) (quoting Anderson, 477 U.S. at 322-23). "[T]he burden on the moving party may be discharged by a `showing' -- that is pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case." Anderson, 477 U.S. at 249-50. We review the district court's grant of summary judgment de novo, applying the same legal standards as the district court and viewing the facts and the inferences drawn therefrom in the light most favorable to the nonmoving party, here, Motor Club. Matsushita Elec. Co. v. Zenith Radio Corp. , 475 U.S. 574, 587-88 (1986). If after reviewing the record in its entirety we find that a reasonable jury could return a verdict in Motor Club's favor, then a genuine dispute of material fact exists and granting summary judgment would be improper. Anderson, 477 U.S. at 248.

IV.

Before addressing the specific questions of whether summary judgment was appropriate with regard to each defendant, we must first clarify what facts were properly before the district court.

The defendants supported their first motion for summary judgment with their own verified answers to interrogatories and affidavits by relatives to the effect that Hanifi and Sultan were not in Maryland on

7

the day of the accident, and that Hanifi's car was in Sultan's driveway in New York. The defendants note that the individual plaintiffs responded to the defendants' first motion for summary judgment by stating that they had no facts with which to oppose the motion. However, Motor Club did oppose the motion, and submitted the affidavits of Hanifi and Sultan admitting ownership and possession, respectively, of the car, but asserting that it was in New York. Later, after winning the initial summary judgment motion, in its opposition to the defendants' motion for reconsideration and then in its opposition to the defendants' renewed motion for summary judgment, Motor Club submitted several other documents. These submissions included: a copy of the police report; a transcription of the statement by John McGovern who observed the white car and recorded the license plate; the transcribed statement of the driver of the plaintiffs' car, Robert Weil, that the car was white; the handwritten statement of plaintiff Lorraine Weil who also observed the white car; and finally, Motor Club's own interrogatory responses.

During oral argument defendants' counsel contended that the plaintiffs could not rely on their opposition to the summary judgment motion on the police report, which contained the license plate number, because that report contained hearsay. Thus, the defendants argue, the motions for summary judgment were properly granted as to both Hanifi and Sultan where the plaintiffs had not established a material issue of fact as to the identity of the white car which caused the accident, and where the defendants had submitted their own sworn affidavits denying involvement in the accident which they buttressed with sworn statements from four other individuals who stated the car was in New York on the morning of the accident.

The defendants' hearsay objection to the admissibility of the police report, which establishes a material issue as to the involvement of Hanifi's car in the accident, is not well taken. The report does contain hearsay, for at some point after the accident eyewitnesses telephoned the police with their observations as to the license plate of the car they saw perform the U-turn, and those statements are recorded in the report. However, the defendants waived any objection to the admissibility of that report when they submitted it to the court on at least three separate occasions with their motions for summary judgment. Our review of the record indicates that the defendants submitted the

report with at least the following: (1) their denied motion for summary judgment of January 17, 1995; (2) their denied motion for reconsideration of the summary judgment of April 27, 1995; (3) their opposition filed April 27, 1995 to a motion of Allstate, and (4) their renewed motion for summary judgment of November 15, 1995 (granted as to Sultan). Indeed, Motor Club noted in its very first opposition to summary judgment that the defendants had submitted the police report as their Exhibit 2, and that the report contained Colleen Young's description of the car bearing Hanifi's license plate as the vehicle causing the accident. Having resolved that evidentiary issue and determined the facts properly before the district court at summary judgment, we now address the propriety of granting summary judgment to defendants Sultan and Hanifi.

V.

Even aside from any extraterritorial effect of New York's Traffic and Vehicle Section 388, the district court's initial ruling denying summary judgment to Hanifi and Sultan was correct given the dispute of fact presented. Thus, its later rulings to the contrary should be reversed.

Maryland requires proof of an owner's negligence, or some sort of agency to hold the owner liable for the driver's negligence.

> Mere ownership of a car does not impose liability for injuries caused in the driving of it. Liability, when it exists, is not for the car, but only for the act or omission of the person driving. And when the owner has not himself been the negligent cause of an injury, he can be held vicariously liable only when the negligence has been that of his servant engaged in his affairs.

Schneider v. Schneider, 152 A. 498, 499 (Md. 1930). With this requirement in mind we review the conflicting nature of the facts properly before the district court at summary judgment.

A.

Hanifi admitted he owns a 1987 white four door Oldsmobile Delta 88 with New York license plate VZY-653. He admitted that he had

9

loaned that car to his brother-in-law at the time of the accident. His brother-in-law's sworn statement is to the same effect and categorically states that he had exclusive possession, that the car was in his driveway in New York, and that it was not involved in the accident. Four family members similarly stated the car was in that driveway on the morning in question.

In contrast, the police report contains the statements of eyewitnesses, apparently unrelated to the Weils, whose statements put Hanifi's car at the scene of the accident in Maryland. One George Reid told the reporting officer that the accident was caused by a white car that made a U-turn through the median. Colleen Young advised the officer that the car was a white four door Oldsmobile or Buick with New York license VZY-653 which caused the accident, and that it was occupied by three black males. While John McGovern indicated the car was driven by three white males, his report was otherwise consistent inasmuch as the report indicates he described the vehicle as a mid-size white car with New York registration.[2]

The conflicting statements illustrate a genuine dispute of material fact both as to the identity of the car and the driver. The district court, in its first ruling on the summary judgment issue, correctly applied Rule 56(c) when it denied the motion stating as follows:

> The motion will be <u>DENIED</u>. Summary judgment cannot be granted unless there is no genuine dispute of material fact. Fed. R. Civ. P. 56(c). Here, the opponent of the motion, Motor Club of America Insurance, has fulfilled its burden of bringing forward evidence that a reasonable fact finder could use to justify a finding in its favor by a preponderance that Hanifi was the owner -- and Sultan, with his permission, the operator -- of the "phantom car" whose illegal U-turn caused the accident, injuring the plaintiffs. It may well be that the movants and their friends swear the car was

_____

[2] McGovern's statement in the police report does not indicate the number of the New York license plate, thus the report seems to indicate that only Young provided the actual plate number. However, McGovern's subsequent video deposition is unambiguous that he called in the plate number.

10

elsewhere, but the eyewitness puts it at the scene, and other evidence established the ownership and use of the vehicle. This evidence, though in part circumstantial, is plainly enough to generate a triable dispute. Celotex Corp. v. Catrett, 477 U.S. 317 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).

In light of this genuine dispute of material fact, it was error for the district court to later grant as to each defendant the motions for summary judgment.

B.

Further supporting a denial of Hanifi's motion for summary judgment are Maryland's longstanding common law presumptions that the operator of a motor vehicle is both the agent of the owner and a permissive user. Campfield v. Crowther, 249 A.2d 168, 173 (Md. 1969) ("It is presumed that the operator of an automobile is the agent, servant, or employee of the owner of the vehicle acting within the scope of his employment,"); State Farm Mutual Auto Ins. Co. v. Martin Marietta Corp., 657 A.2d 1183, 1186 (Md. App. 1995) (presumption that driver had owner's permission). Thus "[t]he owner who asserts the driver was not an agent has the burden of production and persuasion on that issue." State Farm, 657 A.2d at 1186. Based on the facts recited above we disagree with the district court's conclusion during the pre-trial hearing that the defendants had "clearly and unequivocally and undisputedly" rebutted the presumption of agency.

On this record, the best shape in which Hanifi can get out of the question of the agency relation would be submitting that question to a jury as a matter of fact. Since Hanifi has denied driving the car, if a jury should find that the car was involved in the accident, the presumption is that whoever the driver might have been was Hanifi's agent, and that is not shown to have been overcome by this record. Thus, far from requiring a judgment favorable to Hanifi, the record goes a long way toward entering a judgment against him subject only to a fact-finder believing that the car was involved in the accident.

"The presumption [of agency] is rebuttable but to rebut the presumption as a matter of law the evidence required to accomplish this

11

must be both <u>uncontradicted and conclusive</u>." <u>Campfield</u>, 249 A.2d at 173 (emphasis in original) (recently cited by <u>State Farm</u>, 657 A.2d at 1188). Indeed, where there was contradictory evidence as here regarding who drove the car, under Maryland law the issue of who drove and whether the driver was an agent should properly have gone to the jury: "if the evidence as to agency be contradicted, or if uncontradicted is not conclusive, the question should be submitted to the jury." <u>Campfield</u>, 249 A.2d at 173.

Accordingly, the district court erred when it found as a matter of law the presumption of agency had been rebutted. For this additional reason we would reverse the grant of summary judgment as to Hanifi.

VI.

We turn now to whether Maryland would enforce New York Traffic and Vehicle Section 388 extraterritorially as intended by the New York legislature. We emphasize, however, that as stated above, our decision to deny summary judgment to Hanifi and Sultan does not depend solely on the question of the application of this New York statute which imposes vicarious liability on the owner and requires he be insured therefor.**3** The district court did not grant summary judgment as to Hanifi until it reversed its earlier ruling, moments before trial, and decided that Section 388 would not apply.

While we disagree with the district court that there are no factual questions, we are further of opinion that the Maryland Court of Appeals would give extraterritorial effect to New York Section 388, and this provides another reason that summary judgment was inappropriate as to defendant Hanifi.

A.

Defendants argue that because Maryland traditionally has followed the rule <u>lex loci delicti</u>, and because the accident occurred in Mary-

_____

**3** Indeed, with regard to Sultan it is irrelevant whether Maryland would give effect to Section 388. Under Section 388, as under the Maryland law, the driver (for that is the only role Motor Club ascribes to Sultan) is liable at common law for his own negligence.

12

land, the district court was correct to apply Maryland's substantive law, requiring the driver to be the owner's agent, to determine Hanifi's liability. We note initially that it is well settled that a federal court sitting in diversity jurisdiction must apply the choice-of-law rules of the forum state. Klaxon Co. v. Stentor Electric Mfg. Co., Inc., 313 U.S. 487 (1941). Maryland adheres to the traditional rule of lex loci delicti in deciding conflict-of-law questions. See Jacobs v. Adams, 505 A.2d 930, 935 (Md. App.), cert. denied, 510 A.2d 259 (Md. 1986); Hauch v. Connor, 453 A.2d 1207 (Md. 1983)("The rule of lex loci delicti is well established in Maryland. When its rationale has been put into question `this Court has consistently followed the rule.'") (quoting White v. King, 223 A.2d 763 (Md. 1966)). Hauch decided that an even better reason for its decision than lex loci delicti was that, where the forum state was Maryland and the parties had received Maryland workers' compensation benefits, a conflict between Delaware workers' compensation and Maryland workers' compensation law would be decided favorably to Maryland, the forum state, although the accident happened in Delaware.

In the case at hand, if Maryland's law prevented the application of Section 388 the plaintiffs would face a higher burden as to Hanifi's liability, not only at summary judgment, but also at trial. The district court decided that it was bound to follow Maryland's conflict-of-law rule, and that under the lex loci approach, Maryland's negligence rule would govern Hanifi's liability.

> If the accident happened in Maryland, you look to Maryland law to determine the rights and liabilities of the parties, whether a duty existed, whether a duty was breached, and whether that breach of duty proximately caused injury. We look to Maryland law for all of those determinations.

Thus, the district court reversed itself and decided that where the plaintiffs had not put forward affirmative evidence as to the identity of the driver, they could not overcome summary judgment under Maryland law.

We can find no case in which the Maryland Court of Appeals has addressed the application of Section 388. In the absence of precedent our task is to "determine the rule that the . . .[state] Supreme Court

13

would probably follow, not fashion a rule which we, as an independent federal court, might consider best." Lowe's North Wilkesboro Hardware v. Fidelity Mut. Life Ins. Co., 319 F.2d 469, 472 (4th Cir. 1953). Accordingly, we are of opinion that the existence of Maryland common law which is different from Section 388 would not of itself cause the Maryland Court of Appeals to deny full faith and credit to a statute of a sister State which requires the liability insurance of a resident of the latter State to compensate innocent victims injured in an accident in Maryland. As explained below, Section 388 provides a statutory cause of action which supplements existing common law owner liability. Additionally, the policies underlying Section 388 mirror those recognized by the Court of Appeals as guiding Maryland law, so that Maryland's public policy would not be offended by applying the New York statute.

Section 388 provides as follows:

> Every owner of a vehicle used or operated in this state shall be liable and responsible for death or injuries to person or property resulting from negligence in the use or operation of such vehicle, in the business of such owner or otherwise, by any person using or operating the same with the permission, express or implied, of such owner.

N.Y. Vehicle and Traffic Law § 388. "In New York, the owner of a motor vehicle is liable for the negligence of one who operates the vehicle with the owner's express or implied consent." Horvath v. Lindenhurst Auto Salvage, 104 F.3d 540, 542 (2d Cir. 1997). The New York Court of Appeals has explained the policy behind the statute as follows.

> Vehicle and Traffic Law § 388 is part of the legislatively prescribed system for protecting innocent victims of automobile accidents by assuring that there will be a financially responsible party who is available to answer in damages. . . . In addition to making the owner of a vehicle vicariously liable for the negligence of anyone driving it with permission, the statute requires that all vehicle owners procure insurance to cover the liability it creates (see, Vehicle and Traffic Law § 388[1], [4]). This linkage of an owner's vicarious liability

14

> to an owner's obligation to maintain adequate insurance coverage suggests that the Legislature's goal was to ensure that owners of vehicles that are subject to regulation in New York "act responsibly with regard to those vehicles."

Fried v. Seippel, 599 N.E.2d 651, 655 (N.Y. 1992) (citations omitted). Since Farber v. Smolack, 229 N.E.2d 36, 39 (N.Y. 1967), there has been no question but that the New York Legislature intended the statute to apply extraterritorially.**4**

We most recently addressed the policy and extraterritorial effect of Section 388 in Klippel v. U-Haul Co., 759 F.2d 1176, 1180 (4th Cir. 1985). There a New York passenger was injured in an accident in South Carolina. The suit was transferred from the district court in New York to South Carolina. 759 F.2d 1177-78. Under the rule in Van Dusen v. Barrack, 376 U.S. 612 (1964), transferee court must apply law of original court, we reached the conclusion that South Carolina law would apply by determining what law the Court of Appeals of New York would apply, because the matter had been transferred from that forum. Klippel, 759 F.2d 1178. New York follows a "`center of gravity,' or `grouping of contacts,' or`interest analysis' approach to the resolution of conflicts questions in tort cases," whereby the court determines which State has the greatest interest in the application of its law to matter at hand. 759 F.2d at 1179. Thus, where the accident occurred in South Carolina; the truck was registered in Michigan, not New York; the trip was between Florida and South Carolina, and the rental contract was made in Florida, "though the injured plaintiff was a resident of New York, New York has little interest in regulating the rights and liabilities arising out of the Florida lease." 759 F.2d at 1182. Accordingly, we found that the New York Court of Appeals would apply the South Carolina substantive law. 759 F.2d 1182.

_____

**4** The New York Court of Appeals opined that "[i]t is clear that in adding the words `in this state' to the predecessor of [Section 388], the legislature was not concerned with extraterritorial effect. It was substituting `in this state' for the former words `upon a public highway' in order to cover the situation of an accident on private roadways and parking lots." Farber, 229 N.E.2d at 39.

15

Because in Klippel the court followed New York choice of law rules, and because the contacts with New York were considerably less than in the instant case, the result in Klippel is not overly relevant to the case at hand. But our analysis of Section 388 as set forth in the third part of Klippel is both instructive and persuasive. There we noted that:

> Enforcement of the liability created by New York Vehicle Traffic Law § 388 is different. Its application is not a means of avoidance of restrictive barriers created by other jurisdictions. It creates a new substantive cause of action where none before existed.

Klippel, 759 F.2d at 1180. We observed that by its terms the statute explicitly applied to accidents outside of New York, so long as there was sufficient connection to New York.

> In this scheme, the innocent victim class is not limited to New Yorkers, but there must be a connection between the vehicle and its owner on the one hand and the state of New York. That connection is required by the statute itself, and is essential to New York's exercise of its legislative power. . . . Indeed, § 311(4)(a) of New York's Vehicle and Traffic Law provides that the owner's insurance coverage[required for § 388 liability] must extend to any claim arising within the continental United States or the Dominion of Canada.

Klippel, 759 F.2d at 1180. Further, we ruled that "[c]learly New York's legislature has the power to prescribe the terms and coverages of the liability insurance required of the owners of all motor vehicles registered in New York." 759 F.2d at 1183. This analysis of Section 388, finding that the New York legislature intended it to apply extraterritorially, and explaining that Section 388 is different from traditional conflict questions because it is a distinct cause of action is not undermined by the fact that elsewhere in Klippel we employed a New York choice-of-law analysis. In light of our reasoning in Klippel, we are of opinion that New York Traffic and Vehicle Section 388 does not conflict in the traditional sense with Maryland common law negligence rules, and thus the lex loci rule does not apply so that a statute

16

of the State of New York is held of no effect.**5** Absent a Maryland statute, we look to Maryland and federal decisions on the Full Faith and Credit Clause. Therefore, we must look elsewhere for guidance as to how Maryland would treat Section 388.

B.

In an analysis of whether one State will give effect to the law of another State the Full Faith and Credit Clause of the Constitution is paramount. It provides:

> Full Faith and Credit shall be given in each State to the public Acts, Records, and Judicial Proceedings of every other State. And the Congress may by general Laws prescribe the Manner in which such Acts, Records and Proceedings shall be proved, and the Effect thereof.

U.S. Const., Art. IV, § 1. As the Maryland Court of Appeals has observed, in 1948 Congress amended 28 U.S.C. § 1738, which implements the provisions of Art. IV, Section 1 of the Constitution, to provide that "`the acts of the legislature of any state' shall have the same faith and credit in every court within the United States as they have by law or usage in the court from which they are taken." Texaco v. Vanden Bosche, 219 A.2d 80, 83 (Md. 1966). In that same opinion the court recognized that in Hughes v. Fetter, 341 U.S. 609 (1951), the Supreme Court decided that while a forum state need not automatically subordinate its statutory policy to apply the statutory rule of

_____

**5** The defendant's argument that Section 388 does not apply rests exclusively on cases supporting the proposition that Maryland follows steadfastly the rule of lex loci delicti. Appellee's Brief at 9 (relying on Ward v. Nationwide Ins. Co., 614 A.2d 85, 91, n.8 (Md. 1992); Jacobs v. Adams, 505 A.2d 930, 935 (Md. 1986); Hauch v. Connor, 453 A.2d 1207, 1209 (Md. 1983); White v. King, 223 A.2d 763, 765 (Md. 1966); Doughty v. Prettyman, 148 A.2d 438, 440 (Md. 1959); Sacra v. Sacra, 426 A.2d 7, 9-10 (Md. App. 1981); Morris v. Peace, 288 A.2d 600, 601 (Md. App. 1972)). However, these cases were not decided on the basis of one issue critical to the case at hand, the effect of the Full Faith and Credit Clause. Indeed none but Hauch, at n.10, even mentions full faith and credit.

17

another State, it is the job of the Supreme Court to "choose between competing public policies." Texaco, 219 A.2d at 83. It was also in Texaco that the Maryland court observed that in National Bank of Chicago v. United Air Lines, Inc., 342 U.S. 396, 398 (1952) the Court had "reiterated and slightly extended" the holding of Hughes that "public acts" includes legislative enactments. Texaco, 219 A.2d at 83.

Thus the question is whether Maryland would deny full faith and credit to a public act of New York, specifically, a statute which holds owners of cars registered in New York liable for accidents by permissive drivers, and requires them to be insured for such accidents throughout continental North America. The district court ruled that Section 388 created a claim that had not been developed at common law, and not in Maryland. For that reason and because the action took place in Maryland, it refused to apply Section 388. Full Faith and Credit was not mentioned. Our review of Maryland precedent convinces us that the district court erred in so holding. The Court of Appeals has repeatedly stated that Maryland public policy is not violated, or indeed even implicated, where the foreign statute under consideration is merely different from the Maryland rule: "[M]erely a difference of law between the place of the wrong and the forum and not an overriding public policy of the forum" is not sufficient to defeat the application of the statute of another State. Harford Mutual Ins. Co. v. Bruchey, 238 A.2d 115, 119 (1968). Bruchey held that a Virginia statute with respect to consortium would be enforced in Maryland although Maryland law was to the contrary, and Bethlehem Steel Corp. v. Zarnas and Co., Inc., 498 A.2d 605 (Md. 1985), held that where there was a conflict in the statutes of two States and the Maryland statute had provided explicitly that another result was contrary to the public policy of Maryland, the Maryland statute would be enforced, but Bethlehem Steel recognized the rule in Bruchey and Texaco.

The Court of Appeals has made clear that the "[d]eclaration of the public policy of the State is normally the function of the legislative branch of government; in discerning that policy, courts consider, as a primary source, statutory . . . provisions." Bethlehem Steel Corp., 498 A.2d at 608 n.2 (quoting Jones v. Malinowski , 473 A.2d 429 n.4 (Md. 1984)). The court distinguished the result in Bethlehem Steel Corp. from the results in cases in which it found Maryland public pol-

18

icy did not require the application of Maryland law in part on the basis that those cases did not involve a Maryland statute, but as here, involved judge-made common law. Bethlehem Steel Corp., 498 A.2d at 608-09 (distinguishing Texaco v. Vanden Bosche, 219 A.2d 80, and Mutual v. Bruchey, 238 A.2d 115, finding "no Maryland public policy sufficiently strong to prevent the application of the Virginia statutes").

In fact, absent a statement by the legislature that something is contrary to Maryland public policy, the Maryland Court of Appeals is not hesitant to enforce another state's law even though it would produce a distinct or opposite outcome to that which would result under Maryland law. In Texaco v. Vanden Bosche, 219 A.2d 80, 83 (Md. 1966), the court stated that "[r]ecent thinking is that a public policy which will permit a state to refuse to enforce rights created by the law of a sister state must be very strong indeed." Similarly, in Harford Mutual Insurance Co. v. Bruchey, 238 A.2d 115 (1968), the court found that a Virginia statute preventing wives from suing for loss of consortium, while contrary to the Maryland rule, did not violate public policy. The court reconfirmed the language of Texaco that "there is a heavy burden on him who urges rejection of foreign law on the ground of public policy." 238 A.2d at 117-18.

To the same effect, Rhee v. Combined Enterprises, Inc., 536 A.2d 1197 (Md. App. 1988), held that Maryland public policy was not so offended that a sister-state's law should not be enforced. There the court found that to "circumvent the announced public policy of Maryland barring interfamilial tort suits is not so`hurtful or detrimental to the interest and welfare of . . . [Maryland's] citizens' as to violate the principle of comity which would permit the law of New Jersey [which permitted interfamilial torts] to be applied in Maryland courts." 536 A.2d at 1201. Rhee relied on Linton v. Linton, 420 A.2d 1249, 1250 (Md. App. 1980), in which the Court of Special Appeals had noted that "a `heavy burden' is shouldered by one who seeks to block a cause of action in Maryland courts on the premise that the case is contrary to this state's public policy."

Perhaps most telling, however, is Kramer v. Bally's Park Place, Inc., 535 A.2d 466 (Md. 1988), in which the Court of Appeals enforced a gambling contract from New Jersey, where the form of gambling in question was legal, even though such gambling was ille-

19

gal in Maryland. Specifically, the court ruled that Maryland public policy was not so strong as to preclude application of New Jersey law. 535 A.2d at 470. Significantly, because the court found that the New Jersey judgment was not enforceable due to improper service, the court enforced the contract because it found the New Jersey statute regulating gambling and gambling debts was enforceable as to New Jersey gambling contracts in Maryland. 535 A.2d at 467. In determining that the New Jersey statue did not violate Maryland public policy, the court noted that New Jersey's statute authorized the gambling, which distinguished the case from Bethlehem Steel Corp., where Pennsylvania merely tolerated the contract provision at issue. Kramer, 535 A.2d at 468. Further, Kramer based the conclusion that Maryland's public policy was not offended on the fact that historically certain types of gambling were legal and enforceable in Maryland, and thus the legislature had not taken as vehement a position on gambling as it had on the contract provision in Bethlehem Steel Corp. Kramer, 535 A.2d at 470-71.

Similar to Kramer, in the case at bar we deal with an instance where the General Assembly of New York has explicitly legislated a liability and insurance statute to protect innocent victims and Maryland public policy is similarly oriented. The Maryland Court of Appeals, in Pennsylvania National Mutual Casualty Insurance Co. v. Gartelman, 416 A.2d 734 (Md. 1980), has stated Maryland's public policy with regard to auto insurance, and it is substantially similar to the policies behind Section 388, outlined above.

> In Maryland, there is an established legislative policy designed to make certain that those who own and operate motor vehicles in this State are financially responsible. This legislative policy has the overall remedial purpose of protecting the public by assuring that operators and owners of motor vehicles are financially able to pay compensation for damages resulting from motor vehicle accidents.

Gartelman, 416 A.2d at 736 (citations omitted).

In light of the Full Faith and Credit Clause, the decisions of the Maryland courts with respect to the enforcement of the laws of other States in the Maryland courts, and the similarity of the public policy

20

of Maryland to that of New York with respect to the compensation of innocent victims in automobile accidents, we are of opinion that if called upon the Maryland Court of Appeals would afford full faith and credit to Section 388 of the New York law and would not hold that enforcement of Section 388 offended the public policy of Maryland.

We are of opinion, as we have previously stated in Klippel, that "[t]he state in which the injury was sustained has no interest in defeating the additional security provided to the injured person by the application of Section 388." Klippel, 759 F.2d at 1180.

Accordingly, the judgment of the district court must be vacated and the case remanded for further proceedings not inconsistent with this opinion.

VACATED AND REMANDED

21