UNPUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 07-1285

MARTHA C. MILLER; JEFFREY M. MILLER,

Plaintiffs - Appellants,

and

AMANDA MILLER; BRENDA MILLER; JUAN DAVID MILLER,

Plaintiffs,

v.

MANDRIN HOMES, LIMITED; EDWARD C. KENNEDY; JAMES MANDRIN; CHAMPION REALTY, INCORPORATED,

Defendants - Appellees.

Appeal from the United States District Court for the District of Maryland, at Baltimore.   Catherine C. Blake, District Judge. (1:05-cv-03025-CCB)

Argued:  September 24, 2008          Decided:  January 8, 2009

Before WILKINSON, Circuit Judge, HAMILTON, Senior Circuit Judge, and James C. CACHERIS, Senior United States District Judge for the Eastern District of Virginia, sitting by designation.

Affirmed by unpublished per curiam opinion.

Mitchell Jay Rotbert, THE ROTBERT LAW GROUP, L.L.C., Bethesda, Maryland, for Appellants.  Steven Ellis Leder, LEDER LAW GROUP,

L.L.C., Baltimore, Maryland; Barbara Johnson Palmer, BLUMENTHAL, DELAVAN & WILLIAMS, P.A., Annapolis, Maryland, for Appellees.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Appellants Martha Miller and Jeffrey Miller ("the Millers") brought suit against Appellees after the Millers purchased a house and lot that they claim were contaminated by toxic substances.[1] The District Court for the District of Maryland (the "district court") granted summary judgment in favor of the Appellees. Because the Millers failed to provide more than speculative evidence regarding the contamination of their home, we affirm.

I.

In January 2003, the Millers bought a tract of land in Centreville, Maryland from Appellee Mandrin Homes, Ltd. ("Mandrin"), and entered into a contract of sale for a house to be built on the land. They claim that the lot was previously part of a solid and hazardous waste dump; that Mandrin and other Appellees knew or should have known this; and that by grading the land and disturbing its groundwater, Mandrin and other Appellees caused the release of hazardous substances onto the

---

[1] The Millers originally filed suit on behalf of their minor children as well. On February 22, 2007, the district court granted the Millers' motion to dismiss the claims of their minor children without prejudice.

land.  Appellee Champion Realty, Inc. served as the Millers' agent in the purchase.  The Millers took possession of the house in late January 2003 and vacated it in November of the same year.  They claimed that after moving in, they noticed an offensive odor coming from the basement and experienced respiratory, digestive, and other physical ailments.  The Millers also discovered a punctured pipe in their basement, which was corrected by Mandrin, and claimed to notice structural defects and mold growth in the house.

Between May 2002 and May 2003, thirteen environmental and structural inspections were completed on the house at the instigation of the Millers, Mandrin, and the Millers' home insurance carrier.  The test results were mixed.  Several tests found no problems; indeed, one reported that the air in the house was cleaner than the air outside.  Another test recommended the sanitation of the carpets and HVAC system in the house, and noted that the illnesses reported by the family had the characteristics of allergenic reactions to mold, mildew, and bacteria.

The Millers claimed that laboratory tests and groundwater analyses showed the presence of volatile organic substances ("VOCs") in their sump water.  They hired a hydrologist, Dr. Lorne Everett ("Dr. Everett"), to interpret the

4

test results.  Dr. Everett, who never visited the house, analyzed the studies and tests performed by third parties as well as aerial photographs of the house and surrounding area. He opined that the photos revealed significant land disturbances between 1952 and 1957 in the surrounding area "consistent with" a dump or landfill.  He stated that "the detection of volatile organic compounds (VOCs) and the semivolatile compound, phenol, in water from the sump at [the property] is indicative of groundwater contamination under the property."  Dr. Everett also provided a "Rebuttal Affidavit" in response to an affidavit submitted by the Appellees' expert, Dr. Jack Snyder.

Dr. Snyder's affidavit stated that all the chemicals detected in the Millers' house were common substances "found around the average household and in sources other than contaminated groundwater."  He also testified that the chemical concentrations found in the sump water would not pose a health risk even if the sump water was ingested and that "the presence of a contaminant in sump water at the concentrations indicated does not establish either the origin of the contaminant or that the residents of the house were exposed to the contaminant."

In November 2005, the Millers filed a Complaint alleging violations of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9601 et

seq., and making state law claims under Maryland law for breach of implied warranties, unfair competition and deceptive acts under Maryland Commercial Law, deceit, and negligent misrepresentation. The district court granted summary judgment in favor of the Appellees after ruling that the Millers did not present evidence showing a triable issue of fact as to contamination. This appeal followed.

## II.

We review de novo the district court's grant of summary judgment under Federal Rule of Civil Procedure 56. Wickwire Gavin, P.C. v. U.S. Postal Serv., 356 F.3d 588, 591 (4th Cir. 2004). We consider the record de novo and address properly-preserved arguments raised by the appellant, as well as properly-preserved alternative bases for affirmance, to determine whether the evidence shows a genuine issue of material fact that requires a trial. Beverati v. Smith, 120 F.3d 500, 503 (4th Cir. 1997). This court applies "the same legal standards as the district court and view[s] the facts and inferences drawn therefrom in the light most favorable to the non-moving party." Motor Club of America Ins. Co. v. Hanifi, 145 F.3d 170, 177 (4th Cir. 1998).

The Millers acknowledge that all of the counts in their Complaint rest on the CERCLA claim stated in Count I. If the district court correctly found that no genuine issue of material fact existed as to the CERCLA claim, then it properly granted summary judgment on all counts in the Millers' Complaint. To prevail on a CERCLA claim, a plaintiff must show, among other elements, that a "release" or "threatened release" of a "hazardous substance" has occurred. 42 U.S.C. § 9067; see Axel Johnson, Inc. v. Carroll Carolina Oil Co., 191 F.3d 409, 414 (4th Cir. 1999); United States v. Md. Bank & Trust Co., 632 F. Supp. 573, 576 (D. Md. 1986). All of the Millers' legal theories rely on the contamination of their home by toxic substances. Thus, their case hinges on the evidence of contamination they put forward, namely the October 2006 Declaration and the December 2006 Rebuttal Affidavit of Dr. Everett. They argue that these two documents show a genuine issue of material fact. The district court disagreed, holding that, to the contrary, Dr. Everett's testimony was insufficient to establish a prima facie case.

The Millers claim that the district court wrongfully disregarded Dr. Everett's testimony as speculative. Under Daubert v. Merrell Dow Pharmaceuticals, they contend, the court

should have scrutinized the methods and principles employed by their expert witness rather than his conclusions. 509 U.S. 579, 589 (1993). They are correct, of course, that a trial court must decide whether an expert's testimony is admissible under Daubert.[2] The analysis, however, does not end there. Even if expert testimony meets the Daubert admissibility standards, the question remains whether the evidence creates a genuine issue of material fact, i.e., one that would allow the jury to find for the non-moving party on an essential element of the claim. If no genuine issue of fact exists, summary judgment is appropriate.

---

[2] Federal Rule of Evidence 702 governs the use of expert testimony:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Daubert requires a two-part analysis to determine whether proposed expert testimony is admissible. First, the court must determine whether the expert's testimony is grounded in the scientific method and reflects scientific knowledge. Daubert, 509 U.S. at 590, 593. Second, the court must determine whether the evidence proffered is relevant. Id. at 597.

In *Daubert*, the Court explained that when a trial judge "concludes that the scintilla of evidence presented supporting a position is insufficient to allow a reasonable juror to conclude that the position more likely than not is true," the judge "remains free . . . to grant summary judgment." 509 U.S. at 596. A fair reading of the district court's opinion shows that the court had doubts about the admissibility of some or all of Dr. Everett's testimony, but also that it considered his testimony, taken at face value, insufficient to create a triable issue of fact. The court reviewed Dr. Everett's statements and found that a reasonable jury could not logically base a verdict for the Millers on his testimony. We agree that the opinions of Dr. Everett are not sufficient to allow a reasonable juror to find for the Millers.

In the Fourth Circuit, proof of a necessary element offered to escape summary judgment "must be such as to suggest probability rather than mere possibility, precisely to guard against raw speculation by the fact-finder." Sakaria v. Trans World Airlines, 8 F.3d 164, 172-73 (4th Cir. 1993) (citations and internal quotations omitted); see also Textron Inc. ex rel. Homelite Div. v. Barber-Colman Co., 903 F. Supp. 1558, 1565 (W.D. N.C. 1995).

The Millers claim that Dr. Everett's expert conclusions, when viewed in the light most favorable to them,

9

would allow a reasonable juror to infer that groundwater contamination existed on the lot when it was owned by Mandrin, and that the contamination was a result of leachate from a nearby landfill. Dr. Everett's testimony, though, was speculative as to the presence of a landfill and as to the existence of contamination. In his opinion, "the detection of volatile organic compounds (VOCs) and the semivolatile compound, phenol, in water from the sump at 127 Cypress Street is indicative of groundwater contamination under the property." According to Dr. Everett, who studied the reports of others but did not personally visit the property, this contamination occurred via leaching from a dump or a landfill, the presence of which is indicated by aerial photographs that show an "observed pattern of land disturbance . . . consistent with a dump or a landfill." Likewise, he stated in his affidavit that "the occurrence of [chlorinated VOCs and phenolic compounds] is consistent with contamination migrating in groundwater from a landfill source."

Such claims, even if they would be admissible under Daubert, indicate no more than a mere possibility that the Millers' theory of contamination is true. The closest Dr. Everett's affidavit comes to stating an opinion in a manner that would allow a reasonable jury to find for the Millers by a preponderance of the evidence is his statement that the

detection of VOCs "is indicative" of groundwater contamination. This phrase, however, does not show that Dr. Everett believed there actually was groundwater contamination or, more to the point, that he could testify that it was his scientific opinion that groundwater contamination existed. Dr. Everett stated his opinion in a passive manner that suggests his finding falls in the realm of the possible rather than the probable. He stated that one fact – the detection of VOCs – is indicative of the existence of a second, required fact – groundwater contamination. The testimony provides no yardstick by which to measure the strength of this claim. The detection of VOCs could be "indicative" of any number of things, including other sources of contamination. Indeed, other evidence in the record states unequivocally that all of the chemicals detected in the Miller's house also can be found around the average household. Dr. Everett's testimony would not allow a jury to find groundwater contamination by a preponderance of the evidence.

Moreover, none of the other links in the chain of inferences supporting the Millers' landfill leachate theory was stated as anything more than a scientific possibility. The Millers also produced no evidence of medical causation; Dr. Everett is not a medical doctor and thus did not posit his expert opinion as to the causation of the Millers' claimed injuries. In short, the Millers have suggested only

11

possibility, rather than probability, on an element essential to their claims. The district court properly granted summary judgment.

IV.

For the foregoing reasons, the district court's judgment is

AFFIRMED.